MILLER, Carol A., and Miller, Howard C., her husband, Appellants,

v.

KEATING, Lawrence M., and Texaco, Inc.

No. 84–1110.

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1984.

Decided Feb. 11, 1985.

Theodore R. Lewis (argued), Ronald W. Shipman, Coffin, Shipman, Stitt, Lewis & Walters, Easton, Pa., for appellants.

Robert I. Cottom (argued), Cottom, Hoffert & Gring, Reading, Pa., for appellees.

Before ALDISERT, Chief Judge, BECKER, Circuit Judge, and STERN, District Judge *.

## OPINION OF THE COURT

STERN, District Judge:

The district court admitted into evidence a statement, made by an unidentified declarant at the scene of an automobile accident, amounting to an accusation that the accident was the fault of plaintiff Carol Miller. The district judge admitted the statement as *"res gestae,"* without making reference to any of the hearsay exceptions in Fed.R.Evid. 803, or any findings of fact on the issue of admissibility. Fed.R.Evid. 104(a). We conclude that the district judge erred.

### I.

On January 18, 1982, Carol Miller was driving her white Ford LTD east on U.S. Route 22, a limited access highway, near Easton, Pennsylvania. She carried a passenger named Annette Vay. It is undisputed that Miller and Vay were traveling behind a UPS truck and that both vehicles switched into the lefthand lane to avoid a stalled vehicle in the righthand lane near the 25th Street exit ramp. It is also undisputed that, soon thereafter, the Miller car was struck from behind by defendant Texaco's tractor-trailer driven by co-defendant Lawrence Keating. The force of the collision propelled the Miller car first into the side of a car stopped in the righthand lane and then into the rear of the UPS truck. Mrs. Miller sustained serious injuries in the collision. The driver of the car stopped in the righthand lane was Kenneth Parris. His wife, Elfriede Parris, was a passenger.

One dispute at trial was over the amount of time that elapsed between the moment when Mrs. Miller pulled into the lefthand lane and the moment when her car was struck from the rear. Another conflict focused on whether the Miller car was stopped behind the UPS truck or was still moving when it was hit by the Texaco tractor-trailer.

Both Mrs. Miller and her passenger, Annette Vay, testified at trial that Miller had completely stopped her car before being rammed by the Texaco truck. App. at 80, 21–22. According to Vay, the Miller car was stopped in the lefthand lane for "a few seconds" before the accident. App. at 26. Later, she testified that the time period could have been longer than "a second or two." App. at 43. Lawrence Keating testified, however, that he was driving his Texaco tractor-trailer in the lefthand lane, slowing down in order to stop, and there was no vehicle between him and the UPS truck. App. at 218, 241. He testified that he never saw the Miller car pull in front of him, and the first time he saw it was when it was in his lane. App. at 245, 246, 247. He said he saw only a "white blur" half or three-quarters of the way into his lane.

* Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting    by designation.

App. at 248. He claimed that by the time he saw the Miller car in his lane, he was too close to it to avoid the collision. App. at 219–20.

There were other inconsistencies at trial of less relevance to the issue here, but several deserve mention because they illustrate the profusion of accounts before the jury. Mrs. Vay, who testified at length at the trial, had previously told police officer Young that she could not tell him what had happened, "[t]hat she did not know." App. at 52. The Parrises, who were stopped in the right lane, both testified that the Texaco truck had come to a full stop in the left lane behind the Parris car (and two car lengths behind the UPS truck, according to Mr. Parris), before the Miller car pulled in front of it. App. at 186–87, 203. However, both Keating and the UPS driver, Neil Rasmussen, Jr., who was watching out of his side view mirror, depicted the Texaco truck as moving continuously toward the rear of the UPS truck. The UPS driver said, "it looked like I had better give Mr. Texaco all of the room he can have, you know, for stopping." App. at 57. And Keating said he was making "a gradual rolling stop." App. at 219.

There is also a dispute as to when the Parris car arrived alongside the Miller car. Vay and Miller both testified that the Parris car pulled up next to the Miller car during the few seconds it was stopped before being rammed by the Texaco truck. App. at 23, 24, 81. But the Parrises testified that they were stopped in the right lane for "several minutes" or "two minutes" before the accident. App. at 186, 203.

It is the testimony of the Parrises about an incident occurring after the accident that gives rise to this appeal. After being hit in the left side, Mr. Parris pulled his car over. He testified that he left his car, comforted one of the victims in the Miller car, then walked to the rear of the Miller car where his wife was writing down the license plate number of the Miller car. App. at 167–68. At that point, a man approached and said, "the bastard tried to cut in." App. at 168. In somewhat inconsistent testimony, Mrs. Parris stated that she and her husband "were running towards the car, and I heard this person that was driving—running towards us—... [a]nd said the s.o.b. or some words like that, tried to cut in." App. at 197. Mr. Parris could not identify the declarant beyond saying that he was a white male. App. at 168. Mrs. Parris could do no better. App. at 197. There is no indication in the record why she thought the declarant was a driver or which vehicle he drove. Mr. Parris testified that he did not know what vehicle the declarant was driving. App. at 168.

■ Over objections, the trial judge allowed the Parrises to relate their versions of the declaration to the jury. He admitted the statements as *"res gestae."* App. at 168. Parenthetically, we note that this terminology is inappropriate. As the trial judge implicitly recognized in his opinion denying post-trial relief, there is no such exception to the prohibition against hearsay. App. at 360–62. If admissible, the declaration must qualify under one of the genuine exceptions to the hearsay rule. The old catchall, *"res gestae,"* is no longer part of the law of evidence.[1]

As the trial judge also recognized, the excited utterance exception of Fed.R.Evid. 803(2) provides the most likely basis for admitting the statement. The question before us, therefore, is whether that statement by the unknown declarant should have been admitted under Fed.R.Evid. 803(2), which defines "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

---

**1.** As Wigmore notes, *"res gestae"* means literally "the thing done" and properly applies only to words that accompany and aid in giving legal significance to the act. Such words are treated as "verbal acts." Before adoption of the Federal Rules of Evidence, courts applied *"res gestae"* with much confusion to hearsay statements of various sorts. 6 J. Wigmore, *Evidence* § 1745 (J. Chadbourn rev. 1976).

## II.

### A.

Let us first dispose of the possibility that the admission of the unidentified declarant's statement was harmless error. The trial judge has aided us by his opinion denying a new trial. As he put it, "if the evidentiary ruling was wrong, it would require a new trial because the admission of the declarant's statement cannot be classified as harmless error." App. at 363. We agree. The statement supports the defendants' claim that Mrs. Miller was to blame for the accident and contradicts sworn eyewitness testimony that the Miller car was stopped for several seconds before the Texaco truck hit it. In the thicket of conflicting accounts of the accident, the jurors may well have relied heavily on this apparent assignment of blame, made by an unknown person who was not under a duty to speak truthfully and who can never be confronted about his statement.

### B.

The next question is whether the excited utterance exception may ever authorize the admission of a statement by an anonymous declarant. Fed.R.Evid. 806 provides that whenever a hearsay statement is admitted, the declarant's credibility may be attacked through cross-examination and the introduction of evidence of inconsistent statements. The rule confers no absolute right to cross-examination, because hearsay statements may often be admitted despite the unavailability of the declarant. For example, Fed.R.Evid. 804 defines various situations where hearsay testimony comes in even though the declarant is unavailable. Among these are dying declarations, former testimony, and declarations against interest. The unifying trait of all the Rule 803 exceptions is a circumstantial guarantee of trustworthiness sufficient to justify

nonproduction of the declarant, whether available or not.[2] Although Rule 806 cannot be read to confer a right to any particular form of attack on the credibility of a hearsay declarant, it does confer a generalized right that is significantly diminished when the hearsay declarant is not only unavailable, but is also unidentified, and the party against whom the hearsay declarant's statement is introduced is thus deprived not only of the right to cross-examine, but of any meaningful prospect of finding evidence of inconsistency or bias.

We do not conclude, however, that statements by unidentified declarants are ipso facto inadmissible under Fed.R.Evid. 803(2). Such statements are admissible if they otherwise meet the criteria of 803(2). But unlike unavailability, which is immaterial to admission under Rule 803, the unidentifiability of the declarant is germane to the admissibility determination. A party seeking to introduce such a statement carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness.

At minimum, when the declarant of an excited utterance is unidentified, it becomes more difficult to satisfy the established case law requirements for admission of a statement under Fed.R.Evid. 803(2). Wigmore defines these requirements as: (1) a startling occasion, (2) a statement relating to the circumstances of the startling occasion, (3) a declarant who appears to have had opportunity to observe personally the events, and (4) a statement made before there has been time to reflect and fabricate. 6 J. Wigmore, *Evidence* §§ 1750–51 (J. Chadbourn rev. 1976). *See* Fed.R.Evid. 803 advisory committee note; S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 574–75 (3d ed. 1982); J. Weinstein, *Evidence* ¶ 803(2)[01] (1984). There is no doubt that the present case presents a startling occasion and little

---

2. The present rule proceeds upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant at trial even though he may be available. The theory finds vast support in the many exceptions to the hearsay rule developed by the common law in which unavailability of the declarant is not a factor.
Fed.R.Evid. 803 advisory committee note.

doubt that the declarant's statement relates to the circumstances of the occurrence. Partly because the declarant is unidentified, however, problems arise with the last two requirements: personal knowledge and spontaneity.

The first of these expresses the familiar principle that a witness may not testify about a subject without personal knowledge. Fed.R.Evid. 602. This rule applies with equal force to hearsay statements. *Kornicki v. Calmar Steamship Corporation*, 460 F.2d 1134, 1138 (3d Cir. 1972). To be admissible, the declarant of an excited utterance must personally observe the startling event. *McLaughlin v. Vinzant*, 522 F.2d 448, 451 (1st Cir.1975). The burden of establishing perception rests with the proponent of the evidence. *David v. Pueblo Supermarkets of St. Thomas, Inc.*, 740 F.2d 230, 235 (3d Cir.1984). As in all questions of admissibility, the resolution of any dispute of fact necessary to the question is confided to the trial judge to be decided by a preponderance of the evidence. And while the trial judge is not confined to legally admissible evidence in making the determination, Fed.R.Evid. 104(a), still he must make the findings necessary to support admissibility.

Direct proof of perception, or proof that forecloses all speculation is not required. On the other hand, circumstantial evidence of the declarant's personal perception must not be so scanty as to forfeit the "guarantees of trustworthiness" which form the hallmark of all exceptions to the hearsay rule. Fed.R.Evid. 803 advisory committee note. When there is no evidence of personal perception, apart from the declaration itself, courts have hesitated to allow the excited utterance to stand alone as evidence of the declarant's opportunity to observe. *Garrett v. Howden*, 73 N.M. 307, 387 P.2d 874, 876–78 (1963); *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 1117 (1939). In some cases, however, the substance of the statement itself does contain words revealing perception. A statement such as, "I saw that blue truck run down the lady on the corner," might stand alone to show

perception if the trial judge finds, from the particular circumstances, that he is satisfied by a preponderance that the declarant spoke from personal perception.

In this regard, we recognize that we are construing the foundation for Rule 803(2) excited utterances differently than the foundation necessary for admitting co-conspirators' statements as non-hearsay under Rule 801(d)(2)(E). Most courts will not admit a co-conspirator's statement unless there is independent proof, aliunde, of membership in a conspiracy. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 261 (3d Cir.1983). In other words, the statement itself can form no part of evidence establishing admissibility against a non-declarant. By contrast, we find that the statement offered as an excited utterance may itself be a piece of the mosaic establishing its own admissibility.

In the present case, however, the record is empty of any circumstances from which the trial court could have inferred, by a preponderance, that the declarant saw Miller "cut in." The disputed declaration itself does not proclaim it. Indeed, the district judge acknowledged as much in his opinion denying plaintiffs' motion for a new trial. App. at 361. Nevertheless, he drew an inference of perception, reasoning that "the declarant would have made the declaration only if he was in a position to observe the collision." *Id.* Yet the statements reported by the Parrises—"the bastard tried to cut in" and "the s.o.b., or some words like that, tried to cut in"— alone, do not show more likely than not that the declarant saw the event. The declarant might have been drawing a conclusion on the basis of what he saw as he approached the scene of the accident. He might have been hypothesizing or repeating what someone else had said. It is even possible that the declarant was talking about some other driver who had just cut in front of him. It is far from unlikely that the declarant was a participant in the accident, for the Parrises could never identify or exclude anyone as the speaker. And the

tenor of the declaration, i.e., "the bastard tried to cut in," suggests at least the possibility that the declarant was a participant with a natural degree of bias. The self-serving exclamation by a participant in an auto accident "it was the other guy's fault," is hardly likely to qualify as trustworthy.

The circumstances external to the statement itself not only fail to demonstrate that the declarant was in a position to have seen what happened, they also fail to show that the declarant was excited when he spoke. No one so testified, and the trial judge made no finding of excitement. Thus, this last prong of the test for admissibility is also unsatisfied. The assumption underlying the hearsay exception of Rule 803(2) is that a person under the sway of excitement temporarily loses the capacity of reflection and thus produces statements free of fabrication. *See, e.g., Kornicki,* 460 F.2d at 1138; *see also* 6 J. Wigmore *Evidence* § 1747 (Chadbourn rev. 1976). Since lack of capacity to fabricate is the justification for excited utterances, courts have recognized that the length of time separating the event from the statement may be considerably longer than for statements qualifying under the present sense impression exception of Rule 803(1), which is based on the lack of time to fabricate. *See* J. Weinstein, *Evidence* ¶ 803(2)[01] (1984). In *McCurdy v. Greyhound Corporation,* 346 F.2d 224, 226 (3d Cir.1965), for example, this Court approved admission of a statement made ten or fifteen minutes after an accident, recognizing that there can be no arbitrary time limits on the operation of Rule 803(2). Thus, even if several minutes elapsed between the exciting event and the utterance, it is not necessarily an abuse of discretion to admit the statement so long as the trial court explicitly finds it was not the product of conscious reflection. There is no such finding in this case.

We have considered appellants' other contentions and find them to be without merit. The judgment of the district court will be reversed and the case remanded for a new trial.