**Eleanor COYLE, Administratrix Estate of William Coyle, deceased, Plaintiff,**

v.

**KRISTJAN PALUSALU MARITIME CO., LTD., Defendant.**

No. Civ.A. 98–6462.

United States District Court, E.D. Pennsylvania.

Feb. 9, 2000.

---

Aloysius J. Staud, Philadelphia, PA, for William Coyle, plaintiff.

Carl D. Buchholz, III, Rawle & Henderson, Phila, PA, Angela M. Heim, Rawle and Henderson, Philadelphia, PA, for Kristjan Palusalu Maritime Co., Ltd., defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Eleanor Coyle, personally and as the Administratrix of the estate of her husband, William Coyle, deceased, brings this personal injury action against Kristjan Palusalu Maritime Company, Ltd. ("KPMC") pursuant to Section 5(b) of the Longshore and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C. § 905(b). Mrs. Coyle alleges that, on May 13, 1998, her husband suffered personal injuries as a result of a fall while on board the M/V Kristjan Palusalu, a vessel owned by KPMC. At the time of the alleged injury, Mr. Coyle was aboard the vessel working as a longshoreman for a stevedoring company.

Presently before the court is the defendant's motion for summary judgment. The court will grant defendant's motion because plaintiff has proffered no evidence raising a genuine issue of material fact that the vessel breached any duty owed to Mr. Coyle.

## I. FACTS

The following material facts are not in dispute or have been construed in the light most favorable to plaintiff, and all reasonable inferences have been drawn in plaintiff's favor.

Defendant's vessel, the M/V Kristjan Palusalu, arrived in Philadelphia with a cargo of steel. Defendant hired Holt Cargo Systems ("Holt"), an independent stevedoring contractor, to discharge the cargo. On May 13, 1998, the date of the alleged accident, the decedent, William Coyle, was employed by Holt as the stevedore ship boss, in charge of supervising the other longshoremen assigned to discharge the vessel.[1]

At approximately 7:00 a.m., Mr. Coyle and Michael Fagan—the stevedore superintendent and Mr. Coyle's immediate boss—boarded the vessel and observed a "no admittance" wire erected across the poop deck right before the stair case to the main deck. Mr. Fagan took the wire down and set it aside on the poop deck so that the two men could get down to the main deck.[2] Around 8:00 a.m. later that morning, the longshoremen began to discharge the steel cargo from the vessel. No officers or crewmembers of the vessel took part in discharging the cargo, nor were any officers or crewmembers present in the cargo holds of the vessel during the discharge operations. Further, at no time during the discharge of the cargo from the vessel did any officer or crew member of the vessel receive any requests for instructions, directions, assistance, or advice from the stevedore or its employees.

Soon after 10:00 a.m., Mr. Coyle came down the vessel's gangway holding a bloody handkerchief to his nose. When Mr. Fagan asked Mr. Coyle what had happened, Mr. Coyle said that he had backed over the wire that the crew had replaced, thus injuring himself. Mr. Fagan did not see the crew replace the wire prior to Mr. Coyle's fall nor did he actually see Mr. Coyle fall. In fact, there were no witnesses to Mr. Coyle's accident.

Shortly after the incident, Mr. Coyle gave a statement concerning the accident to James Baston, a Holt Superintendent. Using the information provided to him by Mr. Coyle, Mr. Baston filled out an accident report. Mr. Baston did not conduct any independent investigation concerning the accident, he simply relied upon Mr. Coyle's statement.

Subsequently, on December 11, 1998, Mr. Coyle and his wife Eleanor brought this action against KPMC pursuant to the Act claiming that the vessel's negligence had caused his injuries. Specifically, the Coyles claimed that KPMC was negligent by: (1) "failing to warn [Mr. Coyle] of the danger;" (2) "placing a rope across the walkway after the longshoreman had boarded the vessel and using [sic] said walkway;" and (3) "failing to advise [Mr. Coyle] that it was placing a rope across the walkway." See Compl. ¶ 8. On December 19, 1998, Mr. Coyle died for reasons unrelated to the injuries claimed in this lawsuit.[3] Mr. Coyle's deposition had not been

---

1. The United States Supreme Court has referred to the company that contracts with the vessel owner to load and unload the vessel as the stevedore and the stevedore's employees as longshoremen. See Scindia Steam Nav. Co. v. De Los Santos, 451 U.S. 156, 156–57, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). Nonetheless, the terms "stevedore" and "longshoreman" seem to be used interchangeably in the text of the Supreme Court's opinion in Scindia. Webster's Dictionary defines both "stevedore" and "longshoremen" as workers who load and unload vessels. See Webster's II, New Riverside University Dictionary (1988).

2. Mr. Fagan additionally testified that the no admittance chain was still laying down when he boarded the vessel around 8:15 a.m. and that he thought it was in the same place that he had left it earlier that morning. Fagan Dep. at 18–19.

3. Although plaintiff originally contended that Mr. Coyle's death was a result of the injuries he sustained during the fall, plaintiff's counsel conceded at oral argument that he was abandoning this theory. See Tr. of 10/27/99 at 19.

taken prior to his death nor had he signed any sworn statement or affidavit by that time.

Defendant filed the instant motion for summary judgment claiming that it is entitled to judgment as a matter of law for the following two reasons: (1) because there is no admissible evidence concerning how Mr. Coyle's accident happened or what caused the accident and (2) because there is no admissible evidence that defendant was negligent or breached any duty imposed on it pursuant to the Act.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot simply rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir. 1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Indeed, to defeat "a properly supported summary judgment

motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995).

## III. DISCUSSION

### A. *The Duty of a Vessel to Longshoremen*

■ The Act provides in relevant part:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel."

*See* 33 U.S.C. § 905(b). Accordingly, a vessel can only be liable for its own negligence. *See Derr v. Kawasaki Kisen K.K.,* 835 F.2d 490, 493 (3d Cir.1987).

■ It is well-established that the owner of a ship is entitled to "rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." *Scindia Steam,* 451 U.S. at 170, 101 S.Ct. 1614. Pursuant to the Act, the stevedore must provide a "reasonably safe" workplace and to use certain safeguards to protect the health and safety of the longshoremen. *See* 33 U.S.C. § 941(a); *see also Howlett v. Birkdale Shipping Co., S.A.,* 512 U.S. 92, 101, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994); *Scindia Steam,* 451 U.S. at 170, 101 S.Ct. 1614. Indeed, the Stevedore is "in the best position to avoid accidents during cargo operations." *Scindia Steam,* 451 U.S.

at 171, 451 U.S. 156; *see also Howlett*, 512 U.S. at 101, 114 S.Ct. 2057.

The United States Supreme Court has interpreted § 5(b) as imposing three types of duties on the vessel with respect to longshoremen: (1) the turnover duty (comprised of the duty to provide safe conditions and a duty to warn); (2) the active operations/active participation duty; and (3) the duty to intervene. *See Scindia Steam*, 451 U.S. at 167–169, 101 S.Ct. 1614, *Howlett*, 512 U.S. at 98, 114 S.Ct. 2057. If the vessel, through its crew, breaches any one of these duties and that breach causes injury to a longshoreman, the longshoreman may recover from the vessel under the Act.

■ The "turnover duty" concerns the condition of the vessel at the time it is turned over for stevedoring operations. *See Howlett*, 512 U.S. at 98, 114 S.Ct. 2057. The "active operations duty," applicable once stevedoring operations have begun, is violated if the vessel owner "actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation."[4] *Scindia Steam*, 451 U.S. at 167, 101 S.Ct. 1614; *Howlett*, 512 U.S. at 98, 114 S.Ct. 2057. The duty to intervene "concerns the vessel's obligations to intervene with regard to cargo operations in areas under the principal control of the independent stevedore." *Howlett*, 512 U.S. at 98, 114 S.Ct. 2057.

In the present case, plaintiff is relying on the "active operations/active control" duty to establish the liability of the defendant. *See* Mem. of Law in Opp'n to Def.'s Mot. for Summ.J. [hereinafter Pl.'s Mem.] at unnumbered page 7. As stated above, plaintiff claims that defendant breached this duty by "stringing up a wire across a walkway behind longshoreman [sic] who were actively engaged in the unloading of equipment and therefore, unable to recognize the danger that was put in place behind them." *Id.; see also* Compl. ¶ 8.

■ To trigger the active operations duty, the vessel must have substantially controlled or been in charge of: (1) the area in which the hazard existed; (2) the instrumentality which caused the injury; or (3) the specific activities the stevedore undertook. *See Davis*, 16 F.3d at 540. Stated differently, the evidence must be such that the finder of fact could conclude that the vessel exercised control or took charge of an area either because it did not turn exclusive control of the area over to the stevedore but retained substantial control, or because the vessel substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control by actively intervening in the area. *Id.* "The purpose behind the control/charge component [of the active operations duty] is to ensure that the vessel is not held vicariously liable for injuries the stevedore causes . . . ." *Id.* at 540–41.

B. *Evidence of Defendant's Active Participation in the Stevedoring Operations*

Defendant argues that because Mr. Coyle unfortunately died before having

4. The Third Circuit has elaborated on the "due care" requirement of the active operations duty. *See Serbin v. Bora Corp.*, 96 F.3d 66, 71 (3d Cir.1996) (citing *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532 (3d Cir.1994)). To establish a prima facie case of breach of the active operations duty, a plaintiff must show:

(1) that the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the con-

dition; (2) that the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker; (3) that a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of the harm, or (ii) protect himself or herself from the danger; and (4) that the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition.

*Id.* (quoting *Davis*, 16 F.3d at 541).

given any sworn testimony, plaintiff cannot proffer admissible evidence to establish how the accident happened. Thus, defendant contends that plaintiff cannot show that the vessel actively participated in the stevedore's operations or that any conduct by the vessel's crew caused Mr. Coyle's injuries.

In response, plaintiff points to two pieces of evidence: (1) the deposition testimony of Mr. Fagan, the stevedore superintendent and Mr. Coyle's immediate boss, and the accident report prepared by Mr. Baston, also a Holt superintendent, based on a statement made by Mr. Coyle shortly after the accident.[5]

First, plaintiff points to the deposition testimony of Mr. Fagan regarding what Mr. Coyle said as he approached Mr. Fagan while holding the bloody handkerchief to his nose right after the accident:

Q. When you saw him coming off the ship, what, if anything, did you do?

A. I asked him what happened.

Q. And what was his response?

A. *He said the crew put the wire back* and it [sic] fell over.

Fagan Dep. at 14–15 (emphasis added). Later in his deposition, Mr. Fagan testified as follows:

Q. Now, when you saw Mr. Coyle, when he was coming down the gangway holding his nose, what exactly did he say to you?

A. *He said they put the wire up again* and I backed into it.

5. Although plaintiff attaches to her opposition memorandum a worker's compensation form completed by Mr. Coyle approximately three months after the accident, plaintiff does not rely on, or refer to, that form in the text of her brief nor did counsel for plaintiff point to that form as evidence during oral argument of this matter. Accordingly, the court will not consider this form for purposes of deciding defendant's motion.

6. As an initial matter, the court notes that summary judgment is not automatically warranted simply because the non-moving party points to hearsay evidence in an attempt to defeat summary judgment. *See Stelwagon*

Q. And he backed into it?

A. Yeah.

Q. Did he say who specifically put the wire up?

A. *The crew.*

Q. Well, did he say that or you just assumed?

A. *He told me the crew.*

Fagan Dep. at 19, 20 (emphasis added).

Next, plaintiff points to the accident investigation report prepared by Mr. Baston as admissible evidence of how the accident happened. In the written report, Mr. Baston provides the following description of the accident:

Mr. W. Coyle, ship foreman was supervising the discharge of heavy lift ingot moulds from # 8 hold of the M/V Kristjan Palusalu. Standing on Deck he backed away from lift crossing the deck and *tripped on a rope slung by the crew* with a sign attached from the rail to the house, resulting in a cut on his nose. First aid was given but the cut may require stitches.

*See* Pl.'s Mem., Ex. B (emphasis added).

■ Defendant objects to the admission of both the statement by Mr. Coyle to Mr. Fagan and the Baston Report, claiming that they are hearsay.[6] Plaintiff replies that Mr. Fagan's deposition testimony relating the statement by Mr. Coyle is admissible under the excited utterance exception to the hearsay rule. Plaintiff fur-

*Mfg. Co. v. Tarmac Roofing Sys., Inc.,* 63 F.3d 1267, 1275 n. 17 (3d Cir.1995) ("[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.").

The court may make determinations regarding the admissibility of hearsay evidence prior to trial. *See* Fed.R.Evid. 104(a). Here, discovery has closed, plaintiff has been given due notice of defendant's objections, and apparently has submitted all evidence supporting her position. Accordingly, the court can decide the issue of admissibility at this time.

ther contends that the Baston report is admissible as a business record. Finally, plaintiff contends that, in any event, both Mr. Coyle's statement to Mr. Fagan and the Baston report are admissible pursuant to the residual/catchall exception to the hearsay rule. Plaintiff, as the party seeking to invoke these exceptions, bears the burden of establishing the necessary elements for admission of this proposed evidence. *See generally Miller v. Keating,* 754 F.2d 507, 510 (3d Cir.1985); *David v. Pueblo Supermarket of St. Thomas,* 740 F.2d 230, 235 (3d Cir.1984). The court will analyze the exceptions in turn.

### 1. *The Excited Utterance Exception*

■ Federal Rule of Evidence 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. *See* Fed.R.Evid. 803(2). Under Rule 803(2), "[t]he requirements for a hearsay statement to constitute an excited utterance are: (1) a startling occasion, (2) a statement relating to the startling occasion [made while the declarant was under the stress of excitement at the time], (3) a declarant who appears to have had opportunity to observe personally the events, and (4) a statement made before there has been time to reflect and fabricate." *United States v. Mitchell,* 145 F.3d 572, 576–77 (3d Cir.1998) (citing Wigmore, Evidence, §§ 1750–51 (J. Chadbourne rev.1976)).

In the instant case, the statement made by Mr. Coyle to Mr. Fagan is actually comprised of two subparts: (1) that Mr. Coyle fell because he backed up and tripped over the wire; [7] and (2) that the crew replaced that wire.[8] The court will examine Mr. Coyle's statement with those two subparts in mind.

■ First, the court finds that Mr. Coyle's statement that he backed up and tripped on the wire is an excited utterance. Clearly, the act of falling resulting in a bloody nose constitutes an unusual occasion. From these circumstances, it could reasonably be inferred that Mr. Coyle was "startled" by the fall and the nose bleed shortly before he made the statement to Mr. Fagan. In addition, it could reasonably be inferred that the conversation with Mr. Fagan occurred not long after the startling event, because, at the time the statement was made, Mr. Coyle's nose was still bleeding. Thus, it appears that there is little likelihood that Mr. Coyle had time to reflect and fabricate the statement. Finally, it is clear that Mr. Coyle's statement that he backed into the wire was based on his own personal knowledge and is related to the startling event of falling. Accordingly, because the portion of Mr. Coyle's statement to Mr. Fagan that he backed up and tripped over the wire is an excited utterance, it is admissible as an exception to the hearsay rule.[9]

■ The portion of Mr. Coyle's statement that the wire was put up by the crew, however, presents a different problem. As stated above, the statement must relate to a startling event and the declarant must have personally observed the event.

7. With respect to how the accident occurred, the pertinent deposition testimony is:
   A. He said they put the wire up again and I backed into it. ·
   Q. And he backed into it?
   A. Yeah.
   Fagan Dep. at 19–20.

8. The relevant deposition testimony regarding the crew's alleged involvement with the wire is:
   A. *He said the crew put the wire back and it [sic] fell over.*

Fagan Dep. at 14–15 (emphasis added); and
   Q. Did he say who specifically put the wire up?
   A. *The crew.*
   Q. Well, did he say that or you just assumed?
   A. *He told me the crew.*
Fagan Dep. at 19, 20 (emphasis added).

9. Nonetheless, as will be discussed *infra,* admission of this evidence alone does not establish causation on the part of the crew.

The advisory committee notes to Rule 803(2) reflect that because the statement need only "relate" to the startling event or condition, a "broader scope of subject matter coverage" is afforded. *See* Fed. R.Evid. 803(2) advisory comm. note; *see also* Jack B. Weinstein & Margaret E. Berger, *Weinstein's Federal Evidence*, § 803.04[4], at 803–24.1 (2d ed. 1997) ("The statement need not elucidate or explain the occurrence.... If the subject matter of the statement is such as would likely be evoked by the event, the statement should be admitted.").

Assuming arguendo, that this portion of Mr. Coyle's statement to Mr. Fagan was "related" to the startling event, plaintiff cannot show that this portion of the statement was based on personal observation. *See David*, 740 F.2d at 235. It is firmly established that a person may not testify about a subject if that person lacks personal knowledge. *See* Fed. R.Evid. 602 (stating that witness may not testify as to matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."); *see, also Miller*, 754 F.2d at 511 (citing Fed.

R.Evid. 602). · "This rule applies with equal force to hearsay statements." *Id.*

Although direct proof of perception, or proof that eliminates all speculation is not required, "circumstantial evidence of the declarant's personal perception must not be so scanty as to forfeit the 'guarantees of trustworthiness' which form the hallmark of all exceptions to the hearsay rule." *Id.* (citing Fed.R.Evid. 803 advisory comm. note). An inference of personal perception can be drawn, however, if the words of the statement or the circumstances surrounding the event " 'show more likely than not that the declarant saw the event.' "[10] *See Billebault v. DiBattiste*, No. CIV.A. 96–6501, 1999 WL 191648, at *7 (E.D.Pa. Mar.29, 1999) (quoting *Mitchell*, 145 F.3d at 577).

Here, plaintiff points to nothing in Mr. Coyle's statement or elsewhere in the record, such as the time the wire was allegedly replaced by the crew, the circumstances surrounding the wire being replaced, industry practice, or prior practice in connection with this particular ship, from which it could be found more likely than not that Mr. Coyle personally observed a crew member replace the wire before he fell over it. In fact, an equally plausible explanation is that Mr. Coyle just assumed that a crew member had done so.[11] *Cf.*

---

**10.** Although dicta, the Third Circuit in *Miller* gave the following example as to when personal perception might be inferred: "I saw that blue truck run down the lady on the corner." 754 F.2d at 511. According to the court, such a statement "might stand alone to show perception if the trial judge finds, from the particular circumstances, that he is satisfied by a preponderance that the declarant spoke from personal perception." *Id.* In contrast, the wording of the statement at hand does not lead to an inference that Mr. Coyle "saw" the crew replace the wire.

**11.** A comparison of the facts in this case with those present in *David* is helpful. In that case, plaintiff slipped on a wet spot on the floor of the defendant supermarket. 740 F.2d at 232. Invoking the excited utterance exception to the hearsay rule, plaintiff sought to establish notice and provide evidence regarding punitive damages by introducing the testimony of a witness who said that as he went to

help the plaintiff up from the floor, another identified shopper (who inexplicably was not called at trial) stated that she had informed the defendant supermarket of the substance on the floor an hour and a half earlier. *Id.* at 233. Although affirming the evidentiary ruling, the Third Circuit found that the trial court's admission of the shopper's statement "reached the very outer bounds of his permissible discretion" and that they as trial judges may have ruled differently. *Id.* at 235.

Unlike the instant case, the shopper's statement in *David* does not suffer from an utter lack of circumstances showing personal perception. The statement itself indicates that the shopper saw the wet spot, saw plaintiff fall, and she, herself, told the store about the wet spot earlier. In contrast, Mr. Coyle's statement that the crew put up the wire again lacks any indication that he saw the crew do so or that he knew from prior experience that the crew was in the habit to do so.

*Miller,* 754 F.2d at 511 (finding admission of anonymous statement erroneous because record was "empty of any circumstances from which the trial court could have inferred, by a preponderance, that the declarant saw the defendant 'cut in,'" thereby causing car accident).

Indeed, it would be mere speculation for a jury to find that the crew did, in fact, replace the wire (rather than another longshoreman or anyone else who happened to be on board that day).[12] Speculation, conclusory allegations, and mere denials, however, are insufficient to raise genuine issues of material fact. *See Sterling Nat'l Mort. Co. v. Mortgage Corner, Inc.,* 97 F.3d 39, 45 (3d Cir.1996) (finding that plaintiff was obligated to come forward with evidence sufficient to raise triable issue and that "mere speculation about the possibility of the existence of such facts" does not entitle non-moving party to go to trial); *Trap Rock Industries, Inc. v. Local 825 Int'l Union of Operating Engineers, AFL—CIO,* 982 F.2d 884, 890 (3d Cir. 1992) (stating that "non-moving party may not rest upon mere allegations, general denials, or ... vague statements"). Accordingly, the court concludes that Mr. Coyle's statement to Mr. Fagan, which places responsibility on the crew for replacing the wire is not admissible as an excited utterance.

### 2. *The Business Record Exception*

Plaintiff seeks to introduce the Baston accident report by use of the business records exception to the hearsay rule. As stated above, the Baston report contains the statement Mr. Coyle gave to Mr. Baston shortly after the accident, which describes how the accident happened and who was responsible for the replacement of the wire.

Federal Rule of Evidence 803(6) provides that the following is not excluded by the hearsay rule:

A ... report ... in any form of acts, events, conditions, opinions ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make that ... report ..., all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or the circumstances of preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6).

■ Evidence otherwise barred as hearsay is admissible under the business records exception if the proponent of the documentary evidence shows "either (1) that the author of the document had personal knowledge of the matters reported, or (2) that the information he reported was transmitted by another person who had personal knowledge, acting in the course of a regularly conducted activity, or (3) that it was the author's regular practice to record information transmitted by persons who had personal knowledge." *In re Japanese Elec. Prods.,* 723 F.2d 238, 288 (3d Cir. 1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Each level of the business record must satisfy the hearsay rule. *Sana v. Hawaiian Cruises, Ltd.,* 181 F.3d 1041, 1045 (9th Cir.1999) (citing Fed.R.Evid. 805); Fed. R.Evid. 805.

■ Mr. Baston testified that he did not see the accident, that he did not conduct any investigation of the alleged accident, and that he filled out the form based only on what Mr. Coyle told him. *See* Baston's Dep. at 6–8. Thus, the report contains two levels of hearsay: (1) the report itself and (2) the unsworn, out-of-court statements by Mr. Coyle to Mr. Baston.

---

12. Indeed, although Mr. Fagan initially testified that a longshoreman would never have put the wire up, he later conceded that he did not know who in fact did so and that it could have been anyone. *See* Fagan's Dep. at 20.

This court will assume, without deciding, that plaintiff could satisfy at trial, through the use of a records custodian, the requirement that such reports are kept in the ordinary course of business. This court further acknowledges that an inference could be drawn that Mr. Coyle was still under the stress of excitement at the time he made his statement to Mr. Baston.[13] The problem remains, however, that Mr. Coyle's statement to Mr. Baston that the crew was responsible for putting the wire back up, which found its way into the body of the report, lacks any indicia of personal perception. Therefore, as discussed above, absent any indication that Mr. Coyle made this statement based on personal knowledge, a jury would be engaging in mere speculation if it found that the crew was responsible for replacing the wire that allegedly caused Mr. Coyle's injury. Thus, assertion of the business record exception is of no benefit to plaintiff.

### 3. The Residual Exception

■ Likewise, plaintiff cannot rely upon the residual exception to establish the admissibility of either Mr. Coyle's statement to Mr. Fagan that the crew put up the wire on which he tripped or his statement to Mr. Baston regarding the crew's involvement, which is incorporated into the accident report.[14] Federal Rule of Evidence 807 provides that:

> [a] statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence....

Fed.R.Evid. 807.[15] Therefore, under the language of the rule, the evidence must fulfill five requirements: trustworthiness, materiality, probative importance, interest of justice and notice.. "The legislative history of [the exception] indicates that Congress 'intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.'" *Mitchell*, 145 F.3d at 578 (quoting S.Rep. No. 93–1277, Committee on the Judiciary, reprinted in 28 U.S.C.A., Fed.R.Evid. 803, Historical Note, at 276). Moreover, the Third Circuit has "required some degree of rigor attendant to its invocation." *Trustees of University of Pennsylvania v. Lexington Insurance Co.*, 815 F.2d 890, 906 (3d Cir.1987) (citing *In re Japanese Elec. Prods.*, 723 F.2d 238, 301–03 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Plaintiff's invocation of the residual exception to the hearsay rule in this case does not withstand such rigor for two reasons. First, and most importantly, as discussed above, Mr. Coyle's statements to Mr. Fagan and Mr. Baston concerning the crew's involvement in replacing the wire over which he fell lack any indication of personal perception. Indeed, the residual exception is not intended to eliminate the

---

**13.** The court notes that although some additional time passed between the event and the statements Mr. Coyle made to Mr. Baston, Mr. Baston testified that "[Mr. Coyle] came up right after the accident." Baston Dep. at 6. Further, Mr. Baston said that Mr. Coyle was "pretty—well, hurt." *Id.* at 9.

**14.** Moreover, "the residual hearsay exception may not be used as a substitute for the business records exception when counsel has not complied with the requirements of 803(6) unless the requirements of Rule 803(24) have

been met." *United States v. Pelullo*, 964 F.2d 193, 202 (3d Cir.1992).

**15.** Effective December 1, 1997, the residual hearsay exception, previously found in Federal Rules of Evidence 803(24) and 804(b)(5) (dealing with unavailable witnesses), was transferred to Federal Rule of Evidence 807. The transfer was not accompanied by any substantive change. *Mitchell*, 145 F.3d at 578.

ordinary requirement that a witness' testimony be grounded on personal knowledge. Second, admission of Mr. Coyle's unsworn statements placing responsibility for the wire's position on the crew would not further the general purposes of the rules or the interests of justice because, if admitted, defendant would be completely unable to rebut them. *See, e.g., Land v. American Mut. Ins. Co.,* 582 F.Supp. 1484, 1486–1489 (E.D.Mich.1984) (involving product liability claim and finding plaintiff's deceased wife's statement about cause of accident to employer's disability insurance claims adjuster was inadmissible under residual exception because, *inter alia,* defendant would be "utterly unable to rebut" her version). Consequently, the portions of Mr. Coyle's statements to Mr. Fagan and to Mr. Baston (as contained in the accident report) indicating that the crew replaced the wire are inadmissible hearsay.[16]

### C. *Analysis of Defendant's Liability to Mr. Coyle*

██ Plaintiff has offered no admissible evidence showing that the vessel's crew, more likely than not, was in charge of the area where Mr. Coyle fell, that the crew

---

**16.** In a somewhat confusing argument, plaintiff contends that the statements made by Mr. Coyle to Mr. Fagan and the report prepared by Mr. Baston incorporating Mr. Coyle's discussion with him "provide corroboration for each other and are inherently trustworthy in nature." *See* Pl.'s Mem. at unnumbered p. 6. In effect, plaintiff is suggesting that the hearsay statements provide support for one another. In other words, plaintiff appears to be arguing that if a party proffers two hearsay statements with nearly identical content, the statements validate each other. This argument can be summarily dismissed as meritless because each hearsay statement must be viewed independently.

**17.** In fact, during oral argument, plaintiff's counsel conceded that as part of her case in chief, plaintiff must prove that the crew, as opposed to a longshoreman, put up the wire over which Mr. Coyle fell. *See* Tr. 10/27/99 at 12–13.

**18.** The facts in *Davis* are distinguishable from those in the instant case. In *Davis,* the court

put up, or caused to be put up, the wire that allegedly tripped Mr. Coyle, or that the crew had anything to do with the discharging of steel that day. *See Anderson v. Far Eastern Shipping Co.,* No. CIV.A. 99–391, 1999 WL 1073625, at *4–5 (E.D.Pa. Nov.9, 1999) (granting summary judgment in favor of defendant where no admissible evidence establishing that crew substantially controlled area where plaintiff was injured).

Without any evidence that the crew replaced the wire that caused Mr. Coyle's fall, plaintiff cannot raise a genuine issue of material fact that defendant acted negligently and thus should be held responsible for Mr. Coyle's injuries.[17] Simply proving that Mr. Coyle fell over the wire will not do.[18]

### IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment will be granted, and judgment shall be entered in favor of defendant and against plaintiff on all claims.

### *ORDER*

**AND NOW,** this **9th** day of **February, 2000,** it is hereby **ORDERED** that:

---

found that the active operations duty was triggered because the plaintiff had introduced testimony indicating that the second mate had hosed down a portion of the deck used by the longshoremen and "that the crew generally remained on the affected portion of the deck during the stevedore's unloading operations and that the crew was responsible for maintaining the deck." 16 F.3d at 541. Analogous testimony is absent here.

Further, even if the active operations duty had been triggered, there is no admissible evidence of record that the crew knew that the wire was back in place during the stevedoring operations. *Cf. Serbin,* 96 F.3d at 71–72 (involving longshoreman who was injured due to stuck block on hatch cover and finding vessel knew or should have known of stuck block because there was evidence that task of moving blocks fell to crew). Thus, plaintiff would have failed to establish a necessary element of a prima facie case of breach of the active operations duty.

1. Defendant's motion for summary judgment (doc. # 11) is **GRANTED.**

2. **JUDGMENT** is **ENTERED** in favor of defendant and against plaintiff.

The clerk shall mark this case **CLOSED.**

**AND IT IS SO ORDERED.**