

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2001

# United States v. Brown

Precedential or Non-Precedential:

Docket 00-1774

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Brown" (2001). *2001 Decisions*. Paper 135.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/135

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1774

UNITED STATES OF AMERICA

v.

TISHON BROWN
aka Clarence Brown, Jr.

      Tishon Brown,
      Appellant

No. 00-1776

UNITED STATES OF AMERICA

v.

CLARENCE BROWN,
aka Tishon Brown

      Tishon Brown,
      Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action Nos. 99-cr-00054/96-cr -00580)
District Judge: Honorable Stephen M. Orlofsky

Argued on January 8, 2001

Before: SLOVITER, ROTH and RENDELL Cir cuit Judges

(Opinion filed: June 21, 2001)

Robert J. Cleary
United States Attorney
George S. Leone, Esquire
Chief, Appeals Division
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Norman Gross (Argued)
Assistant United States Attorney
Camden Federal Building and
United States Courthouse
401 Market Street, Fourth Floor
Camden, NJ 08101-2098

 Attorneys for Appellee

Mark W. Catanzaro, Esquire
 (Argued)
513 South Lenola Road
Blason IV, Suite 208
Moorestown, NJ 08057

 Attorney for Appellant

OPINION OF THE COURT

ROTH, Circuit Judge:

In 1994, Clarence Brown, a/k/a Tishon Brown, was convicted in the United States District Court for the Eastern District of New York of six counts of armed robbery. While on supervised release in connection with the robbery conviction, Brown was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. S 922(g)(1). Following sentencing in the gun possession case, Brown pled guilty to violating his supervised release by committing the gun possession crime. The District Court revoked Brown's supervised release and imposed a sentence of incarceration for that violation to be served consecutively to the term of imprisonment in the gun possession case. Brown now appeals the judgments in both cases.

2

I. FACTS AND PROCEDURAL HISTORY

On May 25, 1998, at approximately 10:50 p.m., Police
Officer Michael Hughes of the Camden Police Department
was dispatched to the 700 block of Clinton Str eet in
Camden to investigate a missing juvenile report. As Officer
Hughes testified at Brown's gun possession trial, while he
was speaking to a woman on the street about the juvenile,
two black males approached him. "They wer e yelling, they
were real excited, telling me they saw a guy with a gun over
at 7th and New. . . . 7th and New or 7th and W ashington."
"They were very excited very nervous, like they were
hopping around very . . . ." The men told Officer Hughes
that a man approximately two blocks away was waving a
gun at people and threatening to "shoot somebody." Officer
Hughes accompanied the men along Clinton Str eet in the
direction of 7th Street. The men kept saying, "he's over
there" and "he's up there." When they reached 7th Street,
the two men exclaimed, "He's up there, that's him right
there." The men pointed out Brown, who was walking
across 7th Street between Washington and Berkeley
Streets, approximately one and one-half blocks from the
location at which the men had said they encounter ed the
man brandishing the gun.

Officer Hughes observed Brown, clearly illuminated by
street lamps, approaching and carrying a pistol in his right
hand. Officer Hughes took cover behind a parked car, drew
his gun, and radioed for assistance. He order ed Brown to
drop his weapon. After initially ignoring the command,
which Officer Hughes repeated twice, Br own dropped the
gun and complied with the officer's order to lie on the
ground. Officer Kenyatta Kelly arrived at the scene and saw
Brown on the ground. Officer Hughes told Officer Kelly that
Brown had discarded a gun and directed Officer Kelly to
recover and secure it. Officer Kelly r etrieved the weapon,
which contained thirteen live rounds of ammunition. The
ammunition, however, had not been chamber ed and the
gun's firing pin was subsequently discover ed to be broken.
Officer Hughes arrested Brown and r ead him his Miranda
rights. After Brown was booked at the Camden Police
Department, Officer Hughes drove Brown to the Camden
County Jail. During the trip Brown spontaneously told

Officer Hughes that this was not Brown'sfirst offense and asked if he could receive "a lesser char ge." Brown also told Officer Hughes that he was sorry he had put Officer Hughes "through this."

In light of Brown's prior federal convictions for six counts of armed robbery and other convictions for automobile theft and possession of a loaded firearm, the gun possession case was referred to federal authorities for prosecution. Trial was conducted in the United States District Court for the District of New Jersey. The jury found Br own guilty of the gun possession offense.

When Officer Hughes testified at trial that the two men had told him about the man waving the gun and saying he was going to shoot somebody, Brown's attor ney objected and requested a mistrial. The District Court conducted a hearing pursuant to Fed. R. Evid. 104 to assess the objection. On the following day, the court issued a memorandum opinion holding Officer Hughes's testimony admissible as an excited utterance exception to the hearsay rule. Following the jury verdict, the District Court imposed a sentence of 78 months imprisonment, followed by a three-year term of supervised release.

Brown's supervised release in the r obbery case had been transferred to the United States District Court for the District of New Jersey, pursuant to 18 U.S.C. S 3605. Following sentencing in the gun possession case, Br own pled guilty to a violation of his supervised r elease by committing the gun possession crime. Brown and the government agreed as a condition of the plea that, if Brown's gun possession conviction was r eversed on appeal, he would be allowed to withdraw his guilty plea for violating his supervised release in the robbery case. The District Court sentenced Brown to 18 months imprisonment for violation of his supervised release, to be served consecutively to the term of imprisonment in the gun possession case. Brown has appealed in both cases. For the reasons stated below, we will affirm in both.

II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Brown's gun possession offense pursuant to 18 U.S.C. S 3231 and over

4

the violation of supervised release in his r obbery case pursuant to 18 U.S.C. SS 3231, 3583(3) and 3605. We have jurisdiction of his appeals pursuant to 28 U.S.C.S 1291.

We review the District Court's decision to admit evidence for abuse of discretion. United States v. Serafini, 233 F.3d 758, 768 n.14 (3d Cir. 2000). Our review of the District Court's interpretation of the Federal Rules of Evidence is, however, subject to plenary review. Id.

We apply an abuse of discretion standar d in reviewing the District Court's rulings on objections to the summation. If a challenge to the summation was not raised in the District Court, we review for plain err or only. See United States v. Wert–Ruiz, 228 F.3d 250, 252 n.1 (3d Cir. 2000). In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal "egregious error or a manifest miscarriage of justice." United States v. Price, 76 F.3d 526, 530 (3d Cir. 1996).

## III. DISCUSSION

### A. EXCITED UTTERANCES

The "excited utterance" exception to the hearsay rule is a long recognized one. It is incorporated into the Federal Rules of Evidence in Rule 803(2) which provides that an "excited utterance" is admissible as an exception to the hearsay rule as long as it is a "statement r elating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The applicability of the exception is unaffected by the availability or unavailability of the declarant as a witness. Fed. R. Evid. 803. The rationale for the excited utterance exception lies in the notion that excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self inter est and therefore rendered unreliable. See United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999), cert. denied , 120 S.Ct. 2704 (2000); 2 McCormick on Evidence S 272, at 204–05 (5th ed. 1999).

5

Although courts' articulations of the elements necessary to invoke the exception differ, most agree upon three requirements: (i) the occurrence of a startling event or condition; (ii) the statement in question must have been made while the declarant was under the stress of excitement caused by the event or condition; and (iii) the statement must relate to the startling event or condition. See United States v. Moore, 791 F .2d 566 (7th Cir. 1986). In the Third Circuit, we have expanded the r equirements of admissibility to include: (i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate. See United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998); Miller v. Keating, 754 F.2d 507 (3d Cir. 1985).1

In the memorandum opinion it issued following the Rule 104 hearing, the District Court carefully applied our four-part Rule 803(2) analysis as set forth in Mitchell and Miller and concluded that Officer Hughes's testimony about the statements of the two declarants satisfied each of the four prongs. First, the court held that the two declarants' observation of a man wielding a firear m qualified as a startling occasion. Significantly, Brown all but concedes this point in his brief: "On it's [sic] face, a man waving a gun and threatening to shoot people would appear to qualify." Second, the District Court found that the statements of the declarants to Officer Hughes r egarding the man brandishing a gun (Hughes testified that the declarants said they "just saw a guy with a gun .. . over 7th and New, 7th and Washington Street") constituted statements relating to the circumstances of the startling occasion. Third, the District Court held that the declarants' several statements that they had personally seen the man with the gun, coupled with their subsequent statements as they actually pointed out the gunman ("that's him right there") adequately established that the men had the opportunity to observe personally the startling event at issue. Fourth, the court concluded that because the

_____

1. These requirements follow Wigmore's classic formulation. See 6 J. Wigmore, Evidence SS 1750-51 (J. Chadbourne rev. 1976).

6

declarants appeared to be "very excited," "very nervous" and "hopping around," and given that appr oximately one minute had passed between the startling occasion and the declarants' statements to Officer Hughes (Hughes testified that the declarants could have walked from the place they had seen the gunman to Officer Hughes's location in "maybe a minute"), such statements wer e made without the opportunity to reflect and fabricate.

Brown contends, however, that the gover nment failed to provide evidence of the startling event other than Hughes's discussion of the hearsay statements themselves. This argument, however, fails in light of the generally prevailing rule that an excited utterance may of itself be sufficient to establish the occurrence of the startling event. See Moore, 791 F.2d at 571 (citations omitted) (dictum). Academic commentators tend to agree that the hearsay statement itself is sufficient proof of the exciting event without resort to independent corroborating evidence, in both theory and practice. Most jurisdictions also find the statement in itself sufficient.2 Similarly, many courts have held that the appearance, behavior and condition of the declarant may establish, without other independent evidence, that a startling event occurred.3 In addition, the Advisory Committee Note to Federal Rule 803(2) describes rulings holding the statement itself sufficient as "increasing" and the "prevailing practice." See Fed. R. Evid. 803 Advisory Committee's Note, 56 F.R.D. 183, 305; 2 McCor mick on Evidence S 272, at 206 n.19. Indeed, W einstein's Federal Evidence goes so far as to conclude that "hearsay may be used as the foundation for [the excited utterance] hearsay

_____

2. See, e.g., Moore, 791 F .2d at 571 (dictum); Industrial Comm'n v. Diveley, 88 Colo. 190, 294 P. 532 (Colo. 1930); Johnston v. W.S. Nott Co., 183 Minn. 309, 236 N.W. 466 (Minn. 1931); State v. Smith, 178 W.Va. 104, 358 S.E.2d 188, 194–95 (W.Va. 1987) (dicta). But see People v. Burton, 433 Mich. 268, 445 N.W.2d 133 (Mich. 1989); Truck Ins. Exchange v. Michling, 364 S.W.2d 172 (T ex. 1963). See 2 McCormick on Evidence S 272, at 206 & n.17 (5th ed. 1999).

3. See, e.g., Moore, 791 F.2d at 570 & n.1; Wetherbee v. Safety Casualty Co., 219 F.2d 274 (5th Cir. 1955); Wheeler v. United States, 211 F.2d 19 (D.C. Cir. 1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876 (1954); Stewart v. Baltimore & Ohio R. Co., 137 F .2d 527 (2d Cir. 1943).

7

exception. Any other approach would greatly undermine the utility of the exception by causing valuable evidence to be excluded." Weinstein's Federal Evidence,S 803.04[2][b], at 803-21 (2d ed. 2000).4

In light of the volume and persuasiveness of authority bearing on the question, we conclude that an excited utterance may itself be sufficient to establish that a startling event occurred and that the question whether corroborating evidence independent of the declaration is needed in a given case to establish the occurr ence of such an event is committed to the discretion of the trial judge.

Brown also asserts that the government failed to satisfy the fourth criterion of the Mitchell test: that the statements were made before declarants had time to r eflect and fabricate. Brown argues that, because Officer Hughes did not know what amount of time had passed between the startling event and the men's statements and because Hughes did not know if the declarants had come to him directly from the location of the event (a distance Brown concedes could be covered in approximately one minute) or by a more circuitous route, the evidence did not preclude the possibility that the two men had sufficient time to fabricate their story.

This argument, too, is unavailing in light of applicable law and the facts of record. Fed. R. Evid. 803(2) does not require that, in order to be admissible, the statement be contemporaneous with the startling event, but rather only with the excitement caused by the event. The critical question in the instant case, therefore, is whether the men's report of an armed man likely occurred during the period of excitement engendered by their sighting of the gunman. In United States v. Tocco, 135 F.3d 116 (2d Cir. 1998), the Court of Appeals for the Second Cir cuit held an out-of-court statement properly admitted as an excited utterance by a declarant who was "all hyped up" and "nervous" even though it was made some thr ee hours after the startling event. Tocco, 135 F .3d at 127-28. In United States v. Phelps, 168 F.3d 1048 (8th Cir . 1999), the Eighth Circuit held the statement of a "visibly distraught"

_____

4. Accord Louisell, 4 Federal Evidence 510-11 (1980).

8

declarant admissible as an excited utterance, although the statement was made 15 to 20 minutes after the startling event. See also United States v. Golden, 671 F.2d 369, 371 (10th Cir. 1982), cert. denied, 456 U.S. 919, 102 S.Ct. 1777 (1982) (out-of-court statement admissible as excited utterance even though approximately fifteen minutes had transpired between the event and the statement).

Under factual circumstances comparable to those here, where the temporal gap was only a matter of one or a few minutes, courts have often admitted the asserted excited utterance. See Territory of Guam v. Cepeda , 69 F.3d 369, 372-73 (9th Cir. 1995), aff 'd in part, rev'd in part by People of Territory of Guam v. Cepeda, 69 F .3d 369 (1995) (citation omitted) (statements made "within minutes" of armed robbery, where declarants were "quite panicked" were properly admitted as excited utterances); United States v. Joy, 192 F.3d at 766 (statement that appellant had "waved a gun around," made within a few minutes of the incident, qualified as excited utterance); United States v. Ladell, 127 F.3d 622, 23, 625 (7th Cir. 1997) (statements of "hysterical woman" to police "within minutes" of 911 call claiming appellant had hit her with a gun and threatened to kill her held admissible as excited utterances); United States v. Bailey, 834 F.2d 218, 228 (1st Cir . 1987) (out-of-court statement by "upset" declarant concerning an attempted bribe three minutes earlier properly admitted as an excited utterance).

In the case at bar, the two declarants' statements to Officer Hughes that "they just saw a guy with a gun" and that "there's a guy over there with a gun" indicate that the startling event was very recent, if not ongoing, at the time of the statements. Therefore, even ignoring the fact that Officer Hughes found Brown carrying a gun shortly after the statements were made, it was entirely reasonable for the District Court to infer from the testimony that only a short time had passed between the startling event and the statements, that the declarants were still visibly in an excited state, that their statements thus wer e likely made in a state of excitement originating with the event, and consequently that their statements were admissible as excited utterances pursuant to Rule 803(2). In short, we

9

can find no deficiency in the District Court's application of the Mitchell test.

Brown also argues that in admitting the two men's statements, the District Court ran afoul of our holding in Miller. We do not agree. Although we did state in Miller that a party seeking to introduce a statement by an unidentified declarant under Rule 803(2) "carries a bur den heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness," Miller, 754 F.2d at 510, we also emphasized that "such statements are admissible if they otherwise meet the criteria of [Rule] 803(2)." Id. For the reasons set forth supra, Officer Hughes's testimony satisfies all the criteria of that rule, as elaborated in Mitchell.

Moreover, the out-of-court statement in Miller was made by an unidentified declarant at the scene of an automobile accident, assigning blame for the accident to the plaintiff. The statement itself did not proclaim the startling event and the record was devoid of evidence fr om which the court could have inferred that the defendant actually saw the accident. See Miller, 754 F.2d at 511. In the present case, however, the declarants did in fact claim to have personally seen the startling event: a man wielding a gun. Mor eover, the declarants are simply stating what they observed. They are not giving an opinion, which is what occurs when the declarant points a finger of fault for causing the accident. For these reasons, we find this case is distinguishable from Miller.

Furthermore, even if we did interpr et the "heavier burden" for unidentified declarants, established in Miller, to require corroboration of the startling event beyond the excited utterance itself, the fact that Officer Hughes almost immediately came upon Brown, who was visibly carrying a gun and who was identified as the gun brandisher by the two declarants, provides such corroboration. See United States v. Collins, 60 F.3d 4, 8 (1st Cir . 1995) (excited utterance regarding appellant's thr eat to shoot the victim corroborated when appellant returned shortly thereafter to

10

scene of the threat bearing a loaded gun while declarant spoke to a police officer).5

We note also that we have recently addr essed the issue of the reliability of a statement by an unidentified informant, albeit in a different context. In United States v. Valentine, 232 F.3d. 350 (3d Cir. 2000), we held that an unidentified informant's tip in a high crime area to a law enforcement officer that a man wearing a blue sweat top, blue pants, and a gold neck chain had a gun, was not to be considered unreliable solely because the informant r efused to identify himself to the officer. We found the statement sufficiently reliable to justify an investigatory stop of the suspect. Id. at 357. As the Supreme Court has instructed, the question is whether the anonymously reported information "should be deemed trustworthy in light of the total cir cumstances." Id. at 354 (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983)). The total circumstances in the pr esent case include the facts that the declarants accompanied Officer Hughes to the location where they pointed out Br own and that Brown was indeed visibly carrying a gun in his hand.

For the above reasons, we conclude that the testimony of Officer Hughes concerning the statements of the two men was properly admitted into evidence by the District Court under the "excited utterance" exception to the hearsay rule.6

_____

5. Brown also invokes United States v. Sallins, 993 F.2d 344 (3d Cir. 1993), to challenge the admissibility of the out-of-court statements. In Sallins, however, we were not pr esented with the question whether the statements at issue were admissible as excited utterances. That decision, therefore, is not relevant to the issue before us.

6. Brown also argues that the err oneous admission of Officer Hughes's testimony was exacerbated by Officer Kelly's testimony concerning Officer's Hughes's radio report. Officer Kelly testified: "I was on patrol in
that area and I heard Officer Hughes come over the radio that . . . he had been told there was a guy walking up the street with a gun." Brown's counsel objected to the statements as inadmissible hearsay and moved for a mistrial. At sidebar, defense counsel reversed his position and conceded that the testimony would be admissible because the declarants' statements had been admitted into evidence as excited utterances and because Officer Hughes's repetition of the statements over the radio would be admissible as a present sense impression under Fed. R. Evid. 803(1). Brown's counsel then moved to strike the testimony

11

B. SUMMATION REMARKS

We now consider Brown's contentions r egarding certain
of the prosecutor's summation remarks. Because Brown
either failed to object to the comments at trial or lodged
different objections to them, we can only review the
comments for plain error. See United States v. Walker, 155
F.3d 180, 187 (3d Cir. 1998) (pr osecutorial remarks as to
which no objection is made at trial are r eviewed only for
plain error); Fed. R. Crim. P. 52(b).

Brown first objects to the following r emarks of the
prosecutor during the government's initial summation:

> Two men which he believes came from Edmonds
> Avenue came out excited, started yelling ther e's a guy
> with a gun around New Street in the ar ea of New and
> 7th, carrying a gun. He's waving it around.
>
> What does Officer Hughes do? He testifies, and I'll
> submit to you there has been no challenge to this
> testimony, it's uncontested. . . .

At this point, Brown's counsel interrupted the prosecutor
and objected, claiming that the government was attempting
to shift the burden of proof to the defendant and asserting
that the "evidence has been challenged, it's been denied."
At sidebar, the prosecutor explained that she had intended
to complete her interrupted remark with the wor ds, "it was
uncontested that [Officer Hughes] walked down the street."
The District Court accepted the prosecution's explanation
and concluded that the remark in its entir ety would have
constituted "fair comment" on the evidence. The Court also
noted that it was clear from the charge and Brown's not
guilty plea that he was contesting the charge and overruled
the defense objection.

_____

whereupon the District Court agreed to strike it and instructed the jury
to "disregard the last answer given by Officer Kelly." In view of defense
counsel's concession of admissibility of Officer Kelly's testimony, of its
cumulative nature, see Serafini, 233 F.3d at 770, and of the District
Court's instruction to the jury to disregar d it, see United States v.
Newby, 11 F.3d 1143, 1147 (3d Cir . 1993), we find no merit to Brown's
contention that it exacerbated the prior err or -- which we have held was
not in fact error.

12

Brown complains on appeal not that the pr osecutor's remarks unfairly shifted the burden of pr oof but rather that they constituted impermissible commentary on the accused's silence. We conclude, however , that prosecutor's remarks did not constitute impermissible commentary on Brown's decision not to testify at trial. In this case, the government did not make a direct comment concerning Brown's silence; the only aspect of the summation of which Brown now complains is the formulation,"there has been no challenge to his testimony, it's uncontested."

We have held that a prosecutor's r emark that any aspect of the government's evidence was "undisputed" or "uncontradicted" at trial constitutes an impr oper comment on a defendant's silence only where "the language used was manifestly intended or was of such a character that the jury would naturally take it to be a comment on the failure of the accused to testify." Bontempo v. Fenton, 692 F.2d 954, 958 (3d Cir. 1982). Brown has failed to satisfy either of these requirements. As the gover nment explained at sidebar, the comments in question went only to the relatively innocuous fact that Officer Hughes walked down Clinton Street before seeing Brown. The trial court had every right, in the exercise of its sound discr etion, to credit that explanation of the prosecutor's interrupted comments to the extent it saw fit. See United States v. Mabry, 3 F.3d 244, 248 (8th Cir. 1993), cert. denied , Edwards v. U.S., 511 U.S. 1020, 114 S.Ct. 1403, abrogation on other grounds recognized in United States v. Sheppar d, 219 F.3d 766, 767 (8th Cir. 2000), cert. denied, ___ S.Ct. ___ (2001). Given the fact that the District Court accepted this r easonable explanation, we are unable to find that the prosecutor's remarks were "manifestly intended" or would "naturally [be taken]," Bontempo, 692 F.2d at 958, as a comment on Brown's silence.

Brown also asserts that the government's comments "necessarily" reminded the jury of the defendant's failure to testify at trial. This argument, too, is unpersuasive. The claim that a prosecutor's remark necessarily would be perceived by a jury as an adverse comment on the accused's silence must be assessed in the context of the summation as a whole and of the evidence intr oduced at

13

trial. See Byrd v. Collins, 209 F .3d 486, 533 (6th Cir. 2000); United States v. Francis, 82 F.3d 77, 78 (4th Cir. 1996). Viewed in the context of the entire summation and all the evidence introduced at Brown's trial, we cannot agree that the government's references to "uncontested" testimony necessarily would have been interpreted as a commentary on Brown's silence. Particularly given the fact that the comment at issue was interrupted and never subsequently completed, there is no reason to conclude that the jury would have assumed it referred to Br own's failure to testify. The jury surely was aware of the numer ous aspects of Officer Hughes's testimony that were unchallenged by defense counsel over the course of the trial. Furthermore, the defense strategy had included numerous attempts to impeach government witnesses. Thus it is mor e likely that the jury would have understood the prosecutor's references to "uncontested" testimony as responses to such impeachment attempts rather than as veiled r eferences to the defendant's silence. See United States v. Durant, 730 F.2d 1180, 1184 (8th Cir. 1984), cert. denied, 469 U.S. 843, 105 S.Ct. 149 (citations omitted) (jury likely to view government's sixteen remarks concer ning unchallenged testimony as a response to the impeachment attempt, rather than as an adverse comment upon defendant's silence).

Brown also challenges certain of the pr osecutor's remarks during the government's r ebuttal summation as either an attempt to shift the burden of pr oof to the defense or improper implicit commentary on the defendant's decision not to testify. In rebuttal, the pr osecutor stated:

> Officer Kelly, he sees Officer Hughes after he's got him on the ground with the gun pointed -- Officer Hughes points the gun out and Officer Kelly goes over and retrieves it.

> And you have the defendant's statements. I submit that they're admissions of guilt, ladies and gentlemen of the jury. Have we heard any suggestion of some motive Officer Hughes would have for making up this story?

Examined in context, these remarks clearly do not shift the burden of proof or constitute impr oper commentary on

14

Brown's failure to testify. Rather , they simply amount to a proper rebuttal argument. During the defense summation, Brown's counsel cast doubt upon Officer Hughes's testimony that he was unaware until trial that the gun recovered at the arrest scene had a broken firing pin, and suggested the possibility that "Officer Hughes planted" the defective and therefore harmless"gun on him, Mr. Brown." In its rebuttal statement, when the prosecutor asked, "Have we heard any suggestion of some motive Officer Hughes would have for making up this story?", Br own's counsel objected and at sidebar accused the government of shifting the burden of proof to the defendant. The District Court overruled the defense objection, stating,

> I think you opened the door, you called into question Officer Hughes' credibility, suggested he might have planted the weapon, it was a broken weapon. I think this is fair comment and I don't think it shifts the burden. The objection is overruled.

We find no error in the District Court's ruling. Indeed, we have at least twice found commentary of this type to constitute proper rebuttal material. See United States v. Dansker, 537 F.2d 40, 63 (3d Cir. 1976) (prosecutor's comments challenging the failure of defense counsel to offer an innocent explanation for a suspicious conversation involving appellant did not constitute improper commentary on appellant's failure to testify); United States v. Adamo, 534 F.2d 31, 39 (3d Cir. 1976) (pr osecutor's remark during summation that "nobody denied" a portion of witness's testimony was not an impermissible commentary on appellant's silence, but rather an attempt to defend witness's credibility after attacks of defense counsel). Additionally, we have specifically held that when, as here, the defense uses its summation to accuse a gover nment witness of framing the defendant, the government may in its rebuttal point to the absence of evidence to support such an accusation. See United States v. Pungitore, 910 F.2d 1084, 1124 (3d Cir. 1990). It is our view that the government properly did so in the instant case.

Brown's only other argument relating to the prosecution's summation concerns the following remarks:

15

> The judge instructed you to use your common sense, to take things in light of your own life experiences. W as it uncontested or did the defendant's case -- did Officer Hughes say Camden police, drop the gun? That's what Officer Hughes testified that he said.

Brown failed to object to these comments at trial. We find neither error nor any colorable miscarriage of justice here. See Price, 76 F.3d at 530. Indeed, it appears that a mere prosecutorial slip of the tongue gave rise to the language to which Brown now objects -- language with no discernible adverse effect upon the defendant. Read in context, as any such comments must be, the prosecutor's use of the phrase "Was it uncontested or did the defendant's case --" appears to be nothing more than an instance of garbled syntax that she immediately corrected with a proper r eference to admitted evidence: "Did Officer Hughes say Camden police, drop the gun?" We think the Supr eme Court's observation in Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868 (1974), concerning challenges to closing ar guments particularly apposite to our analysis. Because summations

> are seldom carefully constructed in toto before the event [and] improvisation frequently results in syntax left imperfect and meaning less than crystal clear . . . a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting thr ough lengthy exhortation, will draw that meaning fr om the plethora of less damaging interpretations.

Id. at 646-47. As a general rule, in assessing whether an ambiguous prosecutorial remark should be construed as an improper comment on the defendant's decision not to testify, appellate courts "should not strain to r each the one interpretation which ascribes improper motives to the prosecutor." United States v. Monaghan, 741 F.2d 1434, 1437 (D.C. Cir. 1984), cert. denied, 470 U.S. 1085, 105 S.Ct. 1847 (1985). In this case, the District Court properly declined to do so, as do we.

IV. CONCLUSION

For the foregoing reasons, we find Br own's challenges to his conviction in the gun possession case meritless. We will

affirm that conviction. For that reason, we will also affirm the revocation of Brown's supervised r elease in the robbery case.

17

RENDELL, Circuit Judge, dissenting:

The difficulty I have with the majority's application of the excited utterance exception to the hearsay rule in this instance stems from the fact that the element of a "startling occasion" has not been independently verified but was, instead, "proven" by the hearsay statement itself. While the majority's view may be "the majority view," that does not remove the need for an assessment on a case-by-case basis of the appropriate ruling regarding admissibility. The unique factual setting presented here r equired a different result.

Here, the defense theory was that officer Hughes had planted the gun. The only evidence that runs counter to that theory is the statement of Officer Hughes, r ecounting the statement made by the three unidentified males. No other witness saw or heard anything. Officer Hughes' statement that he then went and saw the defendant waving the gun does not add to the reliability of the hearsay testimony; rather, Hughes' testimony that he observed Brown with the gun could just as easily be no more than an embellishment of a fabrication. Nor does thefinding of the gun itself add any element of reliability, because that fact is just as compatible with the defense theory that the gun was planted as it is with the government's theory that Brown possessed it.

The reliability problem in the fact patter n presented is thus compounded by the fact that the witness allegedly hearing the statement regarding the purported startling event is the very person whose credibility is under attack. The majority's stamp of approval on Hughes' version of events, cloaking it with reliability by ruling it not to be impermissible hearsay, seems to hand the gover nment an unwarranted bonus.1

_____

1. Although not an "excited utterance" setting, in United States v. Sallins,
993 F.2d 344 (3d Cir. 1993), we noted the problem created by the absent government witness. There, a 911 tape describing a black male carrying a gun had been admitted into evidence:

        Here, the only admissible evidence linking Sallins to the possession
        of a gun was circumstantial evidence conveyed through the

18

We said in Miller v. Keating, 754 F .2d 507 (3d Cir. 1985):

> The unifying trait of all the Rule 803 exceptions is a circumstantial guarantee of trustworthiness sufficient to justify nonproduction of the declarant, whether available or not. Although Rule 806 cannot be r ead to confer a right to any particular form of attack on the credibility of a hearsay declarant, it does confer a generalized right that is significantly diminished when the hearsay declarant is not only unavailable, but is also unidentified, and the party against whom the hearsay declarant's statement is introduced is thus deprived not only of the right to cross-examine, but of any meaningful prospect of finding evidence of inconsistency or bias.

Id. at 510 (footnote omitted). We then noted, as the majority here does concede, that where the declarant is not identified, the party seeking to introduce such a statement carries a "heavier" burden to demonstrate the statement's "circumstantial trustworthiness." Id.  at 510.

In Miller, there was no question as to whether the startling occasion occurred. Rather, the issue was whether the proponent of the testimony established the declarant's personal knowledge and the statement's spontaneity. Id. Here, the issue is whether the gun-waving incident ever really happened and, other than the officer's self-serving statement that the defendant in fact was holding the gun, there is no evidence that the incident in fact occurred. There is no evidence of "cir cumstantial trustworthiness," let alone evidence to satisfy a "heavier" bur den. Id. at 511.

In the circumstances presented her e, I would find that Officer Hughes' testimony concerning the purported

_____

> testimony of Officers Santiago and Howard. . . . Because the officers'
> testimony was hotly contested, we cannot say with any degree of certainty that the evidence of the police radio call and the 911 computer record did not contribute to the jury's verdict. The evidence cemented the government's case by adding an invisible, presumably disinterested witness who allegedly saw precisely what the police said they saw.

Id. at 348 (emphasis added).

19

statement by the unidentified declarants was insufficient to establish the hearsay statement's own admissibility. On this record, Hughes' testimony constitutes"scant[ ]" evidence that the startling event actually occurr ed; it lacked "sufficient guarantees of trustworthiness" to provide the basis for the admission of the hearsay statement as an excited utterance. Miller, 754 F.2d at 510.

I think the District Court admitted a hearsay statement that "proved" more than was in fact proven. In a criminal case such as this, where the defense theory seeks to undercut the very trustworthiness of the gover nment's version of events, we should not admit hearsay that proves the government's case if the reliability of the statement is questionable. Otherwise, the exception swallows the rule, as, I think, happened here.

Also, the prosecutor's closing remarks r egarding the evidence's being "uncontested" take on a very different, more prejudicial, quality when unconfir med yet incontrovertible hearsay is the government's central evidence in the case.

I do not believe that these errors were harmless, and I would reverse and require a new trial.

For these reasons, I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

20