

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2005

# Prudential Prop v. Remed Recovery Care

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1727

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Prudential Prop v. Remed Recovery Care" (2005). *2005 Decisions.* Paper 1026.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1026

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1727

———

PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY,

*Appellant*

v.

REMED RECOVERY CARE;
JEFFREY J. CASHEN,
As Legal Guardian for Robert Cashen, An Incompetent;
DORTHY CASHEN,
As Legal Guardian for Robert Cashen;
ROBERT CASHEN, An Incompetent

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-00963)
District Judge: Honorable Michael M. Baylson

———

Argued April 18, 2005

Before: ROTH, FUENTES, and BECKER, *Circuit Judges*.

(Filed: June 13, 2005)

DAVID M. McCORMICK (Argued)
JARED T. HAY
McCormick & Priore
Four Penn Center, Suite 800

1600 John F. Kennedy Boulevard
Philadelphia, PA     19103

Attorneys for Appellant

DOUGLAS H. RIBLET (Argued)
Curtin & Heefner
250 North Pennsylvania Avenue
Morrisville, PA 19067

Attorney for Appellee

———————

OPINION OF THE COURT

———

BECKER, *Circuit Judge*.

Prudential Property and Casualty Insurance Company ("Prupac") filed this diversity action seeking a declaratory judgment that it was not obligated to pay for the costs of treating Robert Cashen for injuries he sustained as a result of a fall on October 30, 2000. Following a non-jury trial, the District Court for the Eastern District of Pennsylvania ruled in favor of defendants, rejecting Prupac's argument that it was not responsible for the costs of Cashen's care. On appeal, Prupac challenges the District Court's interpretation of Pennsylvania law and argues that the court erred in admitting certain evidence relating to the circumstances of Cashen's fall. We will affirm the judgment of the District Court.

I.

In 1976, Cashen, then a student at Pennsylvania State University, was involved in a car accident and sustained serious and permanent brain damage. Thirteen years after the accident, he was moved to a treatment facility managed by Remed Recovery Care Centers so that his condition could be monitored more closely. Prupac, Cashen's automobile insurer at the time of the accident, paid for his medical treatment and his care at the facility.

Like others who suffer from similar neurologic injuries, Cashen had poor balance and was extremely impulsive. As a result, he fell frequently, particularly while reaching for things. On October 30, 2000, Cashen fell from a smoking porch at Remed and seriously injured his spine. While he was being treated for his injuries from the fall, doctors observed that a previously diagnosed degenerative spinal condition that Cashen suffered from had worsened. In order to prevent further injury, doctors performed surgery on Cashen's spine. The surgery, unfortunately, worsened Cashen's condition, necessitating a second procedure. As a result of the two surgeries, he is now confined to a wheelchair.

After learning of the facts surrounding the fall, Prupac filed suit in federal court seeking a declaratory judgment that Cashen's injuries sustained in his fall and surgery were not causally related to his automobile accident and that Prupac was therefore not obligated to pay for his treatment relating to the fall.[1] The District Court, which had

---

[1] Prupac originally filed suit against Remed Recovery Care Centers and Jeffrey Cashen, Robert Cashen's brother and legal guardian. Remed has since reached a settlement with

jurisdiction pursuant to 28 U.S.C. § 1332,[2] held a non-jury trial on January 16, 20, and 21, 2004. On March 1, 2004, it issued an opinion ruling in favor of Cashen. Prupac then filed a timely notice of appeal.

## II.

Prupac raises two issues on appeal. First, it challenges the District Court's interpretation of the Pennsylvania No-Fault Motor Vehicle Insurance Act. Second, it argues that the District Court erred in admitting certain pieces of evidence relating to the cause of Cashen's fall. We will address each in turn.

## A.

At the time of Cashen's car accident, Pennsylvania automobile insurance law was governed by the Pennsylvania No-Fault Motor Vehicle Insurance Act. *See* Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 *et seq.* (repealed 1984). Under the No-Fault Act, "any victim is . . . entitled to receive basic loss benefits," defined to include benefits "for the net loss sustained," including "professional medical treatment and care." *Id.* § 103; 201(a). The term "victim" is defined as "an individual who suffers injury *arising out of* the maintenance or use of a motor vehicle." *Id.* § 103 (emphasis added).

In *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 170

---

Prupac.

[2] The parties are citizens of different states, and the amount in controversy is over $75,000. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.") .

A.2d 571 (Pa. 1961), the Pennsylvania Supreme Court interpreted an insurance policy with language similar to that in the No-Fault Act.[3] The Court held that the phrase "arising out of" in the policy meant "casually connected with, not proximately caused by." *Id.* at 573. The Court thus determined that, in such cases, "'[b]ut for' causation, i.e., a cause and result relationship, is enough." *Id.*

Subsequent Pennsylvania decisions have applied this interpretation to the language of the No-Fault Act. *See, e.g., Alvarino v. Allstate Ins. Co.*, 537 A.2d 18, 20-21 (Pa. Super. Ct. 1988) (*Manufacturers Casualty*'s "construction of a requirement that an injury arise out of the maintenance or use of a motor vehicle has been carried over into interpretation of the No-[F]ault Act's use of the same phrase."). Thus, the No-Fault Act does not require an insured to prove that his injuries were proximately caused by the use of an automobile; in most cases, it is sufficient to demonstrate that the automobile's use was the "but for" cause of his injuries.

This principle is subject to an important limitation. If the relevant injury is caused by "an instrumentality or external force other than the motor vehicle itself," the insurer is not required to provide coverage. *See Lucas-Raso v. American Mfrs. Ins. Co.*, 657 A.2d 1, 3 (Pa. Super. Ct. 1995). Thus, in a case in which a driver was assaulted following a car

---

[3] The policy in *Manufacturers Casualty* obligated Goodville Mutual to pay "for damages caused by accident and *arising out of* the ownership, maintenance or use of the automobile or trailer." 170 A.2d at 572 (emphasis added).

accident, the Pennsylvania Superior Court held that the injuries from the assault did not "arise out of" the use of an automobile. *See Day v. State Farm Mut. Ins. Co.*, 396 A.2d 3 (Pa. Super. Ct. 1978). Similarly, the Superior Court denied coverage in a case in which a motorist was shot by a pursuing police officer, finding that "there must be some causative factor between the use or maintenance of the vehicle and the injuries sustained" and that "even the 'but for' standard" was not met under the facts of that case. *See Erie Ins. Exchange v. Eisenhuth*, 451 A.2d 1024, 1025 (Pa. Super. Ct. 1982).

Two additional cases are particularly relevant to the facts of this appeal. In *Varner v. Nationwide Mutual Insurance Co.*, 489 A.2d 918 (Pa. Super. Ct. 1985), a hospitalized victim of a motor vehicle accident sustained a serious infection, which was shown to be caused by a doctor's negligence. The Superior Court nonetheless found that the motorist's no-fault insurance carrier was liable for the costs of treating the infection. It distinguished cases such as *Day*, observing that "[i]t is much more probable that an individual will be hospitalized than assaulted as a result of operating a motor vehicle." *Id.* at 920. Similarly, in *Smith v. Pennsylvania General Insurance Co.*, the District Court, applying the No-Fault Act, found that an insurer was liable for the costs of treating an accident victim's addiction to pain medication. No. 91-2452, 1991 WL 172164 (E.D. Pa. Aug. 30, 1991). The court found that "the medical expenses for which the plaintiff seeks reimbursement would not have been incurred had the accident never happened" and thus required the automobile insurance carrier to provide coverage, even though the expenses

6

at issue were incurred almost nine years after the relevant accident. *Id.* at *3.

Since we interpret Pennsylvania law, our task is to determine how Pennsylvania courts would rule if faced with a similar set of facts. While the circumstances of this case are highly unusual, we think that a Pennsylvania court, applying these principles, would find in favor of Cashen. The District Court found that Cashen's fall was the direct result of the injuries he sustained in his automobile accident. As such, it "arose out of" the use of an automobile, under the interpretation of that phrase adopted by Pennsylvania courts. This case is readily distinguishable from cases such as *Day* and *Erie Insurance Exchange* in which the relevant injuries were caused by an intervening act of a third party and had almost no causal connection to the use of an automobile. While Cashen's later injuries were far removed in time from his automobile accident, we agree with the District Court in *Smith*, *supra*, that this fact alone does not justify denying coverage under the No-Fault Act. In other contexts, Pennsylvania courts have held that a party responsible for injuries which leave the victim in a weakened condition is similarly liable for injuries sustained in subsequent accidents caused by the victim's weakened state. *See, e.g., Nikisher v. Benninger*, 105 A.2d 281, 284 (Pa. 1954) ("If in truth and in fact the second accident was caused by the weakened condition of the leg due to the original accident, the second injury may properly be referred back to the original injury.")

Prupac nonetheless argues that, under the definition of "injury" in the No-Fault Act, it is not liable for the harm Cashen suffered as a result of his fall. Injury is defined in

7

the Act as "accidentally sustained bodily harm to an individual and that individual's illness, disease, or death resulting therefrom." § 103. Prupac argues that this phrasing represents a conscious decision on the part of the legislature to distinguish between "bodily harm" and "illness, disease, or death." It suggests that "illness, disease, or death" are the only future consequences of an automobile accident that a no-fault insurer is obligated to cover; future "bodily harm" falls outside the scope of the statute.

We disagree. Under the plain language of the statute, the essential question in determining whether a given injury is covered by the No-Fault Act is whether that injury "aris[es] out of" the use of an automobile. That question is answered by the extensive caselaw interpreting the No-Fault Act, none of which supports Prupac's argument. Had the legislature wished to make such a seemingly arbitrary distinction, it could have done so in more explicit terms. Since it did not, we are not inclined to conclude that the addition of the phrase "illness, disease, or death" to the definition of injury was intended to limit the types of bodily harm covered by the No-Fault Act.

Finally, we agree with the District Court that, in close cases, Pennsylvania courts err on the side of coverage. In *Drake v. Pennsylvania National Mutual Casualty Insurance Co.*, the Pennsylvania Supreme Court noted that it has "consistently held . . . that the No-Fault Act must be liberally construed to effectuate its purposes, erring in favor of coverage for the insured in close or doubtful cases." 601 A.2d 797, 800 (Pa. 1992). Thus, even if we accept that this case is close, the District Court was clearly

8

correct in ruling for Cashen.

For these reasons, while we recognize the extraordinary nature of this case, we agree with the District Court that the No-Fault Act requires Prupac to provide coverage for Cashen's injuries.[4]

B.

Prupac also objects to the District Court's decision to admit evidence relating to the cause of Cashen's injuries. We review a District Court's evidentiary decisions for abuse of discretion. *General Electric v. Joiner,* 522 U.S. 136, 146 (1997); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

The District Court found that the injuries Cashen sustained in his fall "arose out of" his automobile accident. In reaching this conclusion, it relied in part on the testimony of experts concerning the likely cause of the fall. These experts testified that the injuries Cashen sustained in his automobile accident made him significantly more prone to falls of the type that occurred here. In so concluding, the experts relied on testimony by two Remed employees as to statements Cashen made shortly after his fall.

Prupac argues that the District Court erred in admitting the evidence of Cashen's statements. At trial, the defense called Courtney Killian, a Remed employee and the first person to discover Cashen after his fall. She testified that she heard Cashen crying for

---

[4]Because this case is so unusual, and because the Pennsylvania courts have set forth clear principles for interpreting the No-Fault Act, we decline to certify the question of coverage to the Pennsylvania Supreme Court.

9

help and found him lying on his back in a bush. On cross-examination, Killian testified that Cashen told her he had fallen after "leaning over to pick something up." She also testified that she observed a partially-smoked cigarette on the ground near where Cashen had fallen. A second Remed employee, Sam Callison, testified that he arrived on the scene shortly after Killian and that Cashen made a similar comment to him.

Cashen himself did not have any memory of the fall at trial, so his statements were the only evidence as to its cause. Prupac objected to the statements, arguing that they were inadmissible hearsay. The District Court overruled Prupac's objection, finding that the statements were admissible under the "present sense impression" or "excited utterance" exceptions to the hearsay rule. *See* Fed. R. Evid. 803(1); 803(2).[5]

Under the Federal Rules, an excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). We have held that a statement can qualify as an excited utterance if the following four conditions are satisfied:

> (i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate.

*United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001).

---

[5] Although Pennsylvania substantive law governs this case, we apply the Federal Rules of Evidence. *See Salas v. Wang*, 846 F.2d 897, 904 (3d Cir. 1988).

We conclude that the District Court did not abuse its discretion in admitting Cashen's statements. The fall was certainly a "startling occasion," Cashen's statement clearly related to the circumstances of that fall, and Cashen himself personally perceived the fall. Prupac argues that the statements made by Cashen "lack immediacy," but we disagree. Killian, who was the first person to discover Cashen, testified that it took her "maybe 30 seconds or so" to reach him after she first heard his screams. She was later asked whether Cashen "told her [that he was trying to pick something up] within a few minutes of his calling from the bush and [her] going out to him from the kitchen," and she responded that he had.

At most, a few minutes elapsed between Cashen's fall and his statement. In *Brown*, this Court found that a statement made by an out-of-court declarant who had observed the defendant waiving a gun qualified as an excited utterance, even though "approximately one minute" had elapsed between when the declarant saw the defendant and when he made the statement. 254 F.3d at 459. The Court observed, "Under factual circumstances comparable to those here, where the temporal gap was only a matter of one or a few minutes, courts have often admitted the asserted excited utterance." *Id.* at 460. In some cases, a passage of a few minutes may be sufficient to give the declarant "time to reflect and fabricate." Cashen, however, was lying in a bush, unable to move and in apparent pain. Under these facts, it seems clear that he spoke before he had time "to reflect and fabricate." Therefore, the District Court did not abuse its discretion in finding

11

that the statements were excited utterances.[6]

Finally, Prupac argues that the District Court erred in admitting the testimony of two expert witnesses who testified concerning the likely cause of Cashen's fall. Dr. David Pleasure and Dr. Barry Snyder both testified that Cashen's fall was the result of injuries he suffered in the car accident. For instance, Dr. Snyder testified:

> His [Cashen's] history is voluminous as I have said. It documents repeatedly, difficulty with falls, balance and gait. This is a man who just before this injury was a professional–a professional student entering into a profession, I believe the legal profession. And he, over these period of years, had shown that he was having more and more difficulty. With this fall, it is another episode on this continuum that was demonstrated even just days earlier where he was unable to maintain a normal balance.
>
> And so the cause for his fall, from everything that is documented and what he has told me as well with my conversation with him, is based on his neurologic impairment that resulted from a 1976 motor vehicle accident.

Prupac does not challenge either experts' qualifications to render an opinion on Cashen's impairments; rather, it argues that the doctors' opinions were based entirely on conjecture.

We have held that an expert's opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). That standard is

---

[6]Because we find that the statements were admissible as excited utterances, we need not address the District Court's conclusion that they were also admissible as present sense impressions.

clearly satisfied in this case. While none of the witnesses was present for Cashen's fall, the evidence showed that Cashen, like other individuals with similar impairments, fell frequently while reaching for things. Thus, when presented with testimony that Cashen said that he fell while reaching for something, it was perfectly reasonable for these experts to conclude that Cashen fell as a result of his impairment. The Supreme Court has held that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. Thus, we conclude that the District Court did not abuse its discretion in admitting the doctors' testimony.

Because we agree with the District Court's interpretation of the No-Fault Act, and we conclude that it did not abuse its discretion in admitting evidence relating to Cashen's fall, we will affirm the judgment of the District Court.

13