

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2008

# USA v. Malone

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3220

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Malone" (2008). *2008 Decisions.* Paper 985.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/985

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-3220
_____

UNITED STATES OF AMERICA

v.

CAMPBELL MALONE,

Appellant

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 04-cr-00038-2)
District Judge:  Honorable James T. Giles

_____

Argued on May 5, 2008

Before:  RENDELL, FUENTES, and CHAGARES, Circuit Judges.

(Filed June 23, 2008)

Paul A. Murphy, Esq.   **[ARGUED]**
office of United States Attorney
1108 King Street, Suite 201
christiansted, St. Croix
USVI, 00820-0000

*Counsel for Plaintiff-Appellee*
*United States of America*

Judith L. Bourne, Esq.   **[ARGUED]**
P. O. Box 6458
34B-35 Norre Gade
Charlotte Amalie, St. Thomas
USVI, 00804-0000

*Counsel for Defendant-Appellant*
*Campbell Malone*

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Campbell Rone Malone, a Certified Public Accountant ("CPA"), was convicted by a jury on four counts of wire fraud (Counts 2-5), in violation of 18 U.S.C. § 1343, and on one count of making a false claim against the Government of the Virgin Islands ("GVI") (Count 7), in violation of 14 V.I.C. § 843.  Malone was sentenced to 48 months' imprisonment and fined $75,000 for the wire fraud offenses, and sentenced to a concurrent 12 months' imprisonment for the false claim offense.  On appeal, Malone argues that (1) there was insufficient evidence to support the wire fraud convictions,

2

(2) there was insufficient evidence to support the false claim conviction, (3) comments made by the prosecution at closing effectively denied him the due process right to a fair trial, and (4) the fine was improperly assessed because the evidence did not demonstrate that he would be able to pay it. For the reasons discussed below, we will affirm.[1]

**I.**

In 1985, the GVI and the United States entered into a consent decree in the District Court of the Virgin Islands, under which the GVI agreed to make certain improvements to its wastewater treatment system. For more than a decade and a half, the GVI consistently failed to fulfill the decree's requirements. Finally, in December 2001, the District Court ordered the GVI to complete the necessary repairs by a specific deadline and to deposit the funds needed to pay for the project into a dedicated trust fund. Virgin Islands Governor Charles Turnbull declared a state of emergency, which freed the GVI to negotiate a no-bid contract with a construction company to get the project done — absent the state of emergency, the GVI would have had to select a contractor through a competitive bidding process.

Around this time, a lawyer named Ashley Andrews created a construction company called Global Resources Management ("GRM"). Andrews became GRM's CEO and Ohanio Harris, Special Assistant to the Governor, became its president. The newly formed company submitted a $3.6 million "bid" for the sewer project, and, without

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

3

revealing his ties to GRM, Harris used his inside influence to help make sure that GRM was awarded the project. In early October 2002, the GVI tentatively accepted GRM's bid, conditioned on (1) GRM's procurement of a performance bond and payment bond for 100% of the contract price and (2) the Governor's approval. Further, a "Notice to Proceed" would have to be issued by the Department of Property and Procurement before GRM would be permitted to start work on the project.

On October 7, acting as a CPA on behalf of GRM, Malone faxed a letter to Alan Feuerstein, a lawyer, asking him for help in securing the bonds required by the GVI. Feuerstein put Malone in touch with Wayne Price, a bond broker, who emailed Malone a collection of bond application paperwork on October 10 (Count 2). On October 11 and 17, Price faxed and emailed Malone bond-related paperwork (Counts 3 and 4).

On October 18, Malone emailed Price a completed bond application package (Count 5), which was signed by Malone as "attorney-in-fact" for Andrews and included a substantial amount of what the evidence demonstrated to be false information. For instance, Malone answered "no" to a question that asked whether GRM or any of its owners or officers was currently involved in any litigation, even though Andrews was in the midst of a $350,000 lawsuit related to another company that he owned. More significantly, in the "work on hand" section of the application, which asked for a list of all contracts that GRM had secured but not yet completed, Malone listed five "contracts" worth a total of $26 million. However, at trial, it became clear that none of these contracts had been obtained and some of the entries appear to have been complete

4

fabrications. Crucially, it is undisputed that "work on hand" does not include expected contracts.

Malone and GRM had trouble obtaining the bonds without a construction contract signed by the Governor. The Virgin Islands Attorney General learned of this and advised the Governor to sign the construction contract — so that the GVI would be able to meet the District Court's latest sewer-repair deadline, December 31, 2002 — but with the condition that no Notice to Proceed would be issued until GRM successfully obtained the requisite bonds. The Governor followed the Attorney General's advice and signed the contract on December 20. The contract included no firm deadlines and only minimal work specifications, and it allowed for virtually unlimited cost overruns.

On January 23, 2003, the United States filed a motion to enjoin the enforcement of the contract. On January 28, before GRM was able to obtain the bond and before any Notice to Proceed was issued, the Governor terminated the contract and the GVI then asked the District Court to dismiss the injunction motion on mootness grounds. The District Court refused, admonished the GVI for its handling of the entire process and, *inter alia*, enjoined the GVI from re-contracting with GRM. *See United States v. Gov't of V.I.*, 248 F. Supp. 2d 420, 422 (D.V.I. 2003) ("A distinct odor emanates from the construction contract the Governor of the Virgin Islands, Charles Wesley Turnbull, signed with [GRM] on December 20, 2002, for emergency sewer repairs, and it is not the smell of sewage from the decrepit and failed St. Croix sewer system. It is the reek of politics and political influence, and quite possibly of political corruption.").

5

On June 12, 2003, Andrews submitted to the GVI a $750,000 post-termination claim, prepared by Malone (Count 7), for compensation for the time and resources that GRM had devoted to putting together its proposal and preparing to bid on the project. The five-volume claim submission included a number of instances of what the evidence showed to be duplicate charges, totaling thousands of dollars.

In 2004, Malone, Andrews, and Harris were indicted for various offenses in connection with these events. Harris pled guilty and Malone and Andrews were tried and convicted together.

## II.

In reviewing a sufficiency-of-the-evidence claim, we "must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Frorup*, 963 F.2d 41, 42 (3d Cir. 1992). Thus, an appellant who raises such a claim faces a very steep burden.

We review a district court's ruling on a challenge to the prosecution's comments at closing for abuse of discretion. *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). We review only for plain error, however, if the defendant failed to raise the issue below. *Id.*

The ability or inability of a defendant to pay a fine is a factual finding, which we review for clear error. *United States v. Seale*, 20 F.3d 1279, 1284 (3d Cir. 1994).

6

## III.

## A.

To convict a defendant of federal wire fraud, a jury must find beyond a reasonable doubt that the defendant (1) knowingly and willfully participated in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) used or caused to be used interstate wire communications in furtherance of the scheme. 18 U.S.C. § 1343; *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001).

Malone argues that the evidence was insufficient in two ways. First, he contends that obtaining the bond was "was not for the purpose of executing the fraudulent scheme charged." (Appellant's Br. 13.) According to Malone, the indictment charged a fraudulent scheme with two purposes: (1) obtaining a no-bid contract and (2) submitting a fraudulent claim for expenses incurred in preparing the contract proposal. He maintains that the faxes and emails that he and Price exchanged could not have furthered either of these purposes because (1) the no-bid contract was already awarded at this point and (2) the idea to submit a false claim did not arise until the contract was terminated by the Governor a few months later.

The Government successfully counters this argument, rightly noting that the scheme, as charged in the Second Superseding Indictment, was for the purpose of fraudulently obtaining money from the GVI and that applying for the bonds was in furtherance of this more-broadly construed scheme. Securing the no-bid contract and submitting the fraudulent claim were described in the indictment as parts of the scheme,

7

not as the purposes of the scheme. Further, the Government emphasizes that, even assuming *arguendo* that Malone's narrower characterization of the scheme's purposes is correct, the sewer contract had not yet been secured when Malone and Price corresponded about the bond application — GRM still needed to obtain the bonds and the approval of the Governor.

Second, Malone asserts that there is no evidence to demonstrate that he had an intent to defraud because, he contends, the Government failed to prove that he knew the bond application was fraudulent. According to Malone, "at most, the government may have proved that [he] was inattentive in his compilation of the bond application." (Appellant's Br. 17.)

In response, the Government points to the testimony of an agent who interviewed Malone about the fraudulent "work on hand" list from the bond application. According to the agent, Malone said that he knew what "work on hand" meant and admitted that he knew the list of "contracts" was just a "wish list." (Appellee's Supp. App. 101.) The agent testified, further, that Malone said specifically that he knew that there was no contract for two of the five listed projects. The agent also said that Malone conceded that, despite indicating on the bond application that Andrews was not involved in any litigation, he knew about Andrews' pending $350,000 lawsuit.

We conclude that, given the agent's testimony, there was sufficient evidence for a rational juror to have found beyond a reasonable doubt that Malone (1) knowingly and willfully participated in a scheme to defraud the GVI, (2) had the specific intent to

8

defraud the GVI, and (3) caused emails and faxes to be exchanged between himself and Price regarding the bond application, which was an important step in the scheme to defraud because securing the sewer contract depended on GRM's obtaining the bonds.

**B.**

Turning to the false claim conviction, to convict a defendant of violating subsection (4) of the Virgin Islands statute titled "Fraudulent Claims Against the Government," a jury must find beyond a reasonable doubt that the defendant (1) "ma[de] or use[d] any false bill, receipt, voucher, roll, account, claim, certificate, affidavit or deposition," (2) "knowing the same to contain any fraudulent or fictitious statement or entry," (3) "in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands." 14 V.I.C. § 843(4).[2]

Malone argues that the evidence was insufficient to prove beyond a reasonable doubt that he knew the claim that he was preparing for GRM was false. According to Malone, he was merely an independent contractor providing an accounting service to GRM and simply "compile[d] data provided to him in the form of handwritten notes into

_____

[2] Both Malone and the Government discuss § 843(1) in their briefs, but it appears from the record that Malone was charged and convicted for violating § 843(4). (Second Superseding Indictment 27; Presentence Investigation Report 1.) Under § 843(1), the first element is slightly different, requiring a defendant to have "ma[de] or present[ed] any claim upon or against the government of the Virgin Islands or any officer, department, board, commission, or other agency thereof." However, this discrepancy does not affect the outcome here.

9

the form of a claim." (Appellant's Br. 19.) He emphasizes that the Government itself said at closing that, other than one obvious instance, the duplicate charges were scattered in "different parts, in different sections of the claim[,] [s]o you really have to sit down and go through and look at every single one of them, match them up with the others, in order to try and figure that out." (App. 243.) Malone asserts that "it was certainly not [his] place to determine whether or not the submission of any claim by GRM in those circumstances was somehow fraudulent." (Appellant's Br. 20.)

The Government argues that the fact that the duplicate charges were scattered across the five-volume document does not mean that the jury did not have enough evidence to conclude that Malone knew about them. It reasons that the jury could have determined that, while a lay person might have overlooked the duplicate charges in a long financial document such as this one, a trained CPA like Malone would not have.

We agree with the Government and therefore conclude that Malone has failed to demonstrate that no reasonable juror could have found beyond a reasonable doubt that he violated 14 V.I.C. § 843(4).[3]

## C.

Malone contends that the prosecution's closing arguments "were so replete with misrepresentations and personal opinion, despite objections by counsel and admonitions

---

[3] We need not address the parties' arguments as to whether, because the sewer contract did not authorize GRM to recover any costs associated with preparing its proposal and obtaining the contract, the entire claim was fraudulent even without the duplicate charges.

10

by the Court, as to produce fundamental unfairness and constitute a denial of due process." (Appellant's Br. 21.) After reviewing the record, we conclude that, although the prosecution's closing was not a model of propriety and clarity, Malone has not demonstrated that the prosecution's comments (individually or collectively) rendered the trial fundamentally unfair. Accordingly, we find that the District Court's failure to take further remedial action in response to the prosecution's closing arguments was not an abuse of discretion, let alone plain error. Therefore, we need not resolve the parties' dispute regarding the extent to which Malone raised this issue before the District Court.

## D.

Finally, Malone argues that the District Court erred in assessing the $75,000 fine because "[t]he evidence does not support [his] ability to pay" it. (Appellant's Br. 31.) Malone fails to recognize that it is the defendant's burden to show his *inability* to pay a fine, not the Government's burden to demonstrate his *ability* to pay it. *See* U.S.S.G. § 5E1.2(a); *United States v. Carr*, 25 F.3d 1194, 1212 (3d Cir. 1994). We conclude that Malone failed to meet this burden, particularly given his acknowledgment that he and his wife owned a $250,000 home in St. Thomas and a corporation that owned an income-producing building in Tortola, and that he was a partial owner of additional, undeveloped land in Tortola.

## IV.

For the foregoing reasons, we will AFFIRM the District Court's Judgment and Commitment Order.

11